## UNITED STATES v. BOLLENBACH.
### No. 187.

Circuit Court of Appeals, Second Circuit.
Jan. 27, 1942.

Charles L. Kahn, of New York City, for appellant.

Samuel H. Reis, for appellee.

Before L. HAND, CHASE, and CLARK, Circuit Judges.

L. HAND, Circuit Judge.

Bollenbach appeals from two judgments, each sentencing him to three months imprisonment for criminal contempt, to be served consecutively. The only point raised is whether the offenses were such as justified summary judgment under § 385 of Title 28, U.S.C.A. The facts are as follows: Bollenbach was one of six persons indicted in November, 1939, for conspiracy to transport stolen securities in interstate commerce, and for the substantive crime. The day set for trial, December 1, 1941, arrived and the attorney who had been retained by Bollenbach a long while before, returned his fee and refused to represent him because of an existing engagement elsewhere. (One attorney had already appeared for him when he was arraigned, and he had later retained a second, one Hawthorne, whom he had never discharged.) Bollenbach then asked for a continuance which the judge granted until December 4th, but on that day the situation remained unchanged. The case had already been set for trial many times, the prosecution had brought together a great many witnesses who were in attendance; but Bollenbach asked for a further continuance which this time the judge denied, over his protest assigning Hawthorne, then present in court, to defend him. The prosecution then opened to the jury and the attorneys for the other accused followed. When

it came Bollenbach's turn, he opened for himself, protesting against being forced to trial and repudiating any assistance from Hawthorne. In the course of some rambling and not altogether coherent talk, he spoke as appears in the passage which we quote in the margin.* (Keating and Milenky mentioned by Bollenbach were government employees who had been engaged in working up the case for the prosecution.)

At the conclusion of the openings the jury went out, and counsel for several of the other accused asked for a severance on the ground that Bollenbach's appearance and words must have irretrievably prejudiced their clients in the jury's mind. Bollenbach also asked for a severance, and kept repeating his demand for a continuance until his attorney should be disengaged. Nothing further was however done that day, and the judge continued the case until December 8th, when he announced that Bollenbach's conduct had deserved punishment, but that he did not wish to imprison him if he "behaved himself" in the future. Thereupon Bollenbach still again brought up the fact that his attorney was engaged elsewhere, and still again complained that he was "being represented in this trial without the attorney of my choosing." The other accused thereupon began to argue once more that there should be a severance because of Bollenbach's imputations against the prosecutors' conduct with the women witnesses, and because of his general conduct and bearing. During this argument one of them said—as showing Bollenbach's bad faith—that he had asked the Keating men-

tioned above, whether in his opening he had not "put on a good act." Bollenbach repeated once more: "I do not intend to go to trial without a counsel of my own choosing. I would rather go to jail fighting for democracy. That is what we are fighting for, democracy; and I say to you, I respectfully request you to have my attorney in court here, the attorney of my choosing." Later: "I tell you I am going to fight; and I will go to jail fighting. I am fighting for democracy. I am fighting with" (for?) "my attorney; the attorney of my choice shall represent me." The Judge and the attorneys then went to chambers where the case against Bollenbach was severed from that against the rest, and he was sentenced to three months imprisonment.

The trial then proceeded before the jury already impanelled, and on the same day Bollenbach, who was in custody, was brought into the court room to be identified by a witness on the stand. No questions were asked of him but the following occurred.

"Mr. B.: I respectfully state I have just been jeopardized by this particular case. I have been committed for contempt of court for three months. I am downstairs engaging counsel so I respectfully ask don't jeopardized my interest. I respectfully ask—

"The Attendant: Be quiet.

"Mr. B.: I will not be quiet. This is an educated democracy (yelling at the top of his voice).

"The Court: Be quiet.

---

* "Mr. Bollenbach: I am going to prove that Mr. Milenky took a young lady and browbeat her and told her, said to her that he would prove that she and some other witnesses had had sexual intercourse together; that Mr. Burns was keeping company with another young lady, and this young lady was accused that Mr. Burns was bruiting all over the street that he had been banging her. That is the kind of evidence that you may have introduced here into court; and I will tell you that just because the Government is presenting this case to you don't think that the defendants haven't some rights.

"Furthermore, the reason I couldn't get an adjournment this morning is quite laughable—Judge Knox doesn't know this, but I will tell him now, that he has been taken advantage of here this morning; he doesn't know it. By whom? Mr. Reis, Mr. Milenky, Mr. Keating. And why?

They sprung on him, 'Your Honor, we can't give this adjournment because the Government has been to such great expenses.' Now I will tell you what to do with them—talk about Hitler? Hitler is a gentleman compared to some of the crap these brutes are playing off here.

"The Court: Mr. Bollenbach, you will have to use decent language in this court.

"Mr. Bollenbach: They used to parade us up and down like a bunch of sheep, and then they would bring a clerk of the court from Minneapolis to identify us as defendants. They did that not once, they used to parade us up and down. We didn't have to stand up, because we knew the racket that was going on. Mr. Reis would say, 'Are the defendants in there?', and we would have to parade up and down like sheep being led to slaughter. Those are the kind of tactics you are going to see here in this case from Mr. Reis. They want to convict us."

"Mr. B.: I will not be quiet.

"The Court: Again the judge will adjudge you in contempt of court and sentence you to three more months."

■ The summary power of the court to punish disturbance or contumely in facie curiae is ancient and has never been questioned; it needs no discussion. Ex parte Terry, 128 U.S. 289, 9 S.Ct. 77, 32 L. Ed. 405; Ex parte Savin, Petitioner, 131 U. S. 267, 9 S.Ct. 699, 33 L.Ed. 150; Cooke v. United States, 267 U.S. 517, 534, 536, 45 S. Ct. 390, 69 L.Ed. 767; United States v. Landes, 2 Cir., 97 F.2d 378. No judge can do his duty, if his power to maintain decorum and secure his authority from being flouted, is subject to cavil and captious question; he must be able to repress disorders quickly and, if necessary, ruthlessly; and unless when he does so, he will be free from later question, he cannot effectively deal at first hand as he must, with the lawless, the defiant, or the covertly contumacious. But just because his powers must be so ample, they must be subject to an eventual scrutiny in the large; so that it may be certain that there existed the substance of an occasion for their exercise. In the case at bar the second offense is not even debatable. Bollenbach had had his warning and knew how his past conduct had been regarded; it was not necessary for him to say anything and certainly not again to prate about his fight for democracy. The assertion that he should have been treated as irresponsible has no support in the record, and appears to have been an afterthought. Coming as the outburst did after the first punishment, the judge would have been unfit for his office if he had not made use of those sanctions which the statute gave him.

■ As to the first sentence, Bollenbach's address to the jury, in the parts we have quoted, was gross and even obscene, and it was quite unnecessary; the fact that there were women among the jurors added to its impropriety. Nevertheless, had he shown any disposition to profit by the warning then given him, it might have been harsh to punish him for what may have been no more than a breach of taste and manners. But it is clear from what followed that he meant nothing of the sort, but to defy the judge's decision that he must go on with the trial after his protest had been overruled again and again. It was not material whether that decision was right or wrong—though in fact it was quite right—he had saved the point for review, and his continued persistence obstructed the transaction of the court's business; such conduct is a well-understood fetch among those so disposed. This, on top of the indecency of his original address, indicated a continuing will to impugn the court's authority which certainly excused effective repression, if it did not demand it.

■ Moreover, particularly in cases of this kind, the record never preserves what were probably the most important factors of the offense—the tone of voice and the general appearance and bearing of the accused. Here for example there was clearly enough in the incident to induce the judge to grant the motion of the other accused for a severance. Deliberately or not—and there was some reason to believe that he had been deliberate—Bollenbach had succeeded in effectively impeding his own prosecution and in securing by his antics that postponement which he had not been able to get directly. If in such circumstances we were to refuse to support a judge who used the only means at hand to assert his prerogative, we should weaken the rightful authority of all judges, incidentally in the interest of one in whose favor we see no reason for lenity. The punishment may have been too severe; but with it we have as little to do as upon any other criminal appeal. Pierce v. United States, 37 App.D.C. 582.

■ The appeal was taken under the Criminal Appeals Rules, 18 U.S.C.A. following section 688, by merely filing a notice. In Nye v. United States, 313 U.S. 33, 44, 61 S.Ct. 810, 85 L.Ed. 1172, Supreme Court held that it should have been taken under § 8(c) of the Act of February 13, 1925, 28 U.S.C.A. § 230; but stood four to four as to whether the circuit court of appeals got jurisdiction without an "application" made to a judge, as prescribed by that statute. The point is therefore still in doubt, as indeed appears from other recent decisions of the court. Alaska Packers Association v. Pillsbury, 301 U.S. 174, 57 S.Ct. 682, 81 L.Ed. 988; Reconstruction Finance Corp. v. Prudence Securities Advisory Group 311 U.S. 579, 61 S.Ct. 331, 85 L.Ed. 364. We have nevertheless thought it best to decide the case as though our jurisdiction was undoubted, merely noticing the question which must hang about it until the point is finally settled.

Convictions affirmed.