**UNITED STATES v. HALL.**

**UNITED STATES v. WINSTON.**

**UNITED STATES ex rel. HALL v.**

**MULCAHY, United States Marshal.**

**UNITED STATES ex rel. WINSTON v. MULCAHY, United States Marshal.**

Nos. 284–287.

Docket 21386–21389.

United States Court of Appeals, Second Circuit.

Argued June 17, 1949.

Decided July 14, 1949.

Writ of Certiorari Denied Oct. 17, 1949.

See 70 S.Ct. 90.

Richard Gladstein, San Francisco, Cal., for appellant Gus Hall.

Louis F. McCabe, Philadelphia, Pa., for appellant, Henry Winston.

Harry Sacher, New York City, Abraham J. Isserman, Los Angeles, Cal., George W. Crockett, Jr., Washington, D. C., on the brief, for appellants.

John F. X. McGohey, United States Attorney for the Southern District of New York, New York City, Frank H. Gordon, New York City, and Irving S. Shapiro, Washington, D. C., Special Assistants to the United States Attorney, Edward C. Wallace, Special Assistant to the Attorney General, Lawrence K. Bailey, Washington, D. C., Attorney, Department of Justice, of Counsel, for appellees.

Before SWAN and CHASE, Circuit Judges, and SMITH, District Judge.

CHASE, Circuit Judge.

The appellants are two of eleven defendants on trial by jury in the District Court for the Southern District of New York on an indictment charging conspiracy to violate Section 10 of Title 18 U.S.C. [now 18 U.S.C.A. § 2385]. Each of them has been adjudged in criminal contempt of court and, though previously having been enlarged on bail, has been remanded for the duration of the trial. Each has appealed from such order as to him and also from a separate order dismissing a writ of habeas corpus. These appeals have been consolidated in this court and one opinion will suffice to dispose of them all.

Several months after the above trial had started and when another of the defendants, John Gates, was testifying as a witness for the defense, he was, on June 3, 1949, adjudged in contempt of court and sentenced for refusing to obey the order of the court directing him to answer a question which the district attorney had asked him on cross-examination. (His refusal was based on constitutional grounds and appeal from that judgment has already been heard by this court and the judgment affirmed in an opinion filed July 1, 1949.) These appellants immediately participated in a demonstration in the court room during which they stood up with their co-defendants, other than Gates, and indicated, as will later appear, their disapproval of the action taken by the judge in respect to Gates. The appellants were at once remanded for the duration of the trial and were taken into custody by the Marshal in whose custody they have since remained, being in court during each succeeding session thereof without benefit of bail, their applications for which have all been denied.

Each of these appellants, on June 6, 1949, filed his petition for a writ of habeas corpus. The writs were issued at once and came on for hearing on June 7, 1949, before another judge. The petitions for the writs showed the oral orders remanding the appellants for the duration of the trial and the returns filed showed that the Marshal was detaining the relators pursuant to these orders. The record not being then satisfactorily clear as to whether they had been held in contempt, the judge at a hearing held on June 8, 1948, desired counsel to request the trial judge to answer the following question: "Was the remanding of the defendants Hall and Winston on June 3, 1949, intended as a form of punishment for any misbehavior on their part in the presence of the Court, constituting a contempt of court under Title 18, United States Code, Section 401(a) [sic.; Section 401 (1)]?"

When his court convened on the afternoon of the same day, June 8, 1949, this question was handed in writing to the trial judge and he replied to it at once as follows: "My answer is that the remanding of the defendants Hall and Winston on June 3, 1949, was intended, first, as an exercise of my plenary powers to remand defendants, or any of them, at any time, and as a form of punishment for misbehavior on their part in the presence of the Court, constituting a contempt of Court under Title 18 U.S.C. Section 401(a) [sic.; Section 401(1)]."

On the same day the trial judge entered formal identical orders of contempt against each appellant and filed identical certificates as to each, pursuant to the require-

ments of Rule 42(a) of the Rules of Criminal Procedure, 18 U.S.C.A., as follows:

"On the third day of June, 1949 defendant appeared in person and by counsel.

"It is adjudged that the defendant has been found guilty of contempt of court through actively participating in a disturbance in the courtroom in the course of the judicial proceedings, as set forth in the attached certificate, and the court having asked the defendant whether he has anything to say why judgment should not be pronounced, and no sufficient cause to the contrary being shown or appearing to the Court,

"It is adjudged that the defendant is guilty as charged and convicted.

"It is adjudged that the defendant is hereby committed to the custody of the Attorney General or his authorized representative for imprisonment for the remainder of the trial in United States v. William Z. Foster, et al., C. 128-87.

"It is ordered that the Clerk deliver a certified copy of this judgment and commitment to the United States Marshal or other qualified officer and that the copy serve as the commitment of the defendant.

\* . \* \* . \* \* \*

"In conformity with Rule 42(a), Federal Rules of Criminal Procedure, I hereby certify that the conduct for which the defendant is punished for criminal contempt was committed in my presence during a session of the United States District Court for the Southern District of New York, under the following circumstances:

"On May 26, 1949, at a time when the defendant Davis spoke out in the courtroom in the midst of the judicial proceedings, the Court stated to the defendant Davis and his co-defendants in the case of William Z. Foster, et al., C 128-87, as follows:

" 'Before you say very much I want to make a little observation. You know, you gentlemen have been bobbing up here, saying things and doing things that I did not consider were very proper to do, some of them rather—well, I won't characterize them because we all remember what you and your other defendants have said and done. This is the first time you have got up. Now, I have determined here that I am going to have an orderly trial. I don't think in the early stages that any of you gentlemen really thought I meant what I said or that I would succeed.

\* \* \* \* \* \*

" 'I have penalties at my disposal, if the defendants insist upon interrupting the proceedings and holding forth, although they have lawyers to represent them, and I dislike very much doing some of the things that the law places it in my power to do.

" 'Now, I just want you to remember that. I believe that the best way to go ahead here is for the defendants to just sit there and let your lawyers represent you instead of jumping up every once in a while to get your own comments in, and your own views, and I tell you, for your own good, that I recommend that.'

"On June 3, 1949, the co-defendant John Gates was sentenced in the absence of the jury for contempt committed by refusing to comply with an order of the Court that he answer a question propounded to him on cross-examination by United States Attorney McGohey.

"Immediately upon the pronouncement of the judgment on contempt, the defense attorneys and the remaining ten defendants rose in the courtroom. The defendant Henry Winston and the defendant Gus Hall, each taking several steps past the end of the counsel table and toward the bench, began, in a disorderly and threatening manner, to shout at the court in loud, angry voices.

"The defendant Winston said in part:

" 'If your Honor please, may I now be heard? More than 5,000 Negroes have been lynched in this country for such—

" 'The Court: Now, Mr. Winston—

" 'Defendant Winston:—and the Government of the United States should be ashamed for bringing in such monstrosity.' " (pp. 6973-6974)

He was then remanded to the custody of the Marshal.

"The defendant Hall said in part: 'It sounds more like a kangaroo court than a court of the United States. I have heard

more more law and more law and more constitutional rights in kangaroo courts.'"

He was then remanded to the custody of the Marshal.

"The situation at that time, with the ten of the defendants and the defense attorneys on their feet, became so serious that it became necessary to send for additional Deputies Marshal, who were then in other courtrooms in the building, to assist in restoring order and to prevent any further incidents in the courtroom. The court suggested to Richard Gladstein, Esq., counsel for the defendant Gus Hall and Robert Thompson that it would be 'prudent if the defendants resumed their seats.' Mr. Gladstein did not instruct the defendants to take their seats and the defendants gave no heed to the Court's direction. After Messrs. Gladstein, Sacher and Isserman, of defense counsel, and the defendant Eugene Dennis had made statements to the Court, the defendant Dennis turned to his co-defendants and stated that he urged 'upon my co-defendants that they at this time do not speak—they can act as they see fit. I urge them not to call for any provocation.' Only then, the ten co-defendants resumed their seats in the courtroom and order was restored."

The reply to the question asked the trial judge and the orders of contempt and certificates became a part of the record in the habeas corpus proceedings. On June 9, 1949, the appellants moved before the trial judge to set aside the orders and these motions were denied. On June 10, 1949, the writs of habeas corpus were dismissed on the ground that the appellants were being detained pursuant to orders of contempt of a court having jurisdiction and that the validity of those orders could not be collaterally attacked in habeas corpus proceedings since the relators had an adequate remedy by direct appeal. Motions for reconsideration were then made and denied and following that, on June 10, 1949, each of the relators appealed from the orders dismissing the writs of habeas corpus and denying the motions.

On the same day, June 10, 1949, each of these appellants also appealed from the trial court's orders of contempt and from that judge's denial of their motions to vacate those orders.

That this court has jurisdiction of the appeals from the orders denying motions to vacate is clear and unquestioned. Title 28 U.S.C.A. § 2255. That is, of course, also true as to the orders dismissing the writs of habeas corpus. Title 28 U.S.C.A. § 2253.

We find no error in the dismissal of the writs of habeas corpus. Such writs, except in unusual circumstances, will not serve as substitutes for an appeal and will not lie where lawfulness of the detention can be tested by direct appeal. Craig v. Hecht, 263 U.S. 255, 44 S.Ct. 103, 68 L.Ed. 293; Bowen v. Johnston, 306 U.S. 19, 59 S. Ct. 442, 83 L.Ed. 455; Sunal v. Large, 332 U.S. 174, 67 S.Ct. 1588, 91 L.Ed. 1982. That is being done in these direct appeals and we shall turn at once to the issues thus presented.

That the appellants were guilty of contempt committed in the presence of the court is so clear that we shall spend no time discussing that phase of the appeals. They were therefore punishable under Section 401(1) of Title 18 U.S.C.A. for misbehavior in the presence of the court obstructing the administration of justice. Section 402 of that Title does not apply as the following excerpt from it clearly shows: "This section shall not be construed to relate to contempts committed in the presence of the court, * * * but the same, and all other cases of contempt not specifically embraced in this section may be punished in conformity to the prevailing usages of law."

Thus we are brought to the decisive issues presented by these appeals from the motions to vacate the contempt orders. They are (1) whether the oral orders made on June 3, 1949, prevented the formal orders on June 8th from becoming valid; (2) whether the orders and certificates, filed on June 8, 1949, comply with the requirements of Rule 42(a) of the Federal Rules of Criminal Procedure; and (3) whether the penalties are sufficiently definite to be punishment which is lawful.

168

■ In the situation of disorder and confusion which the trial judge faced in his court room on June 3, 1949, there was neither the time nor the need for him to prepare and file any certificate under Rule 42(a), F.R.Cr.P., before taking such prompt and effective action as he could to quell the disturbance. He represented the authority of this government which had been defied by enough men acting in concert to make a rather formidable display of opposition and he saw fit to vindicate that authority by promptly remanding these two appellants. Compare United States v. Bollenbach, 2 Cir., 125 F.2d 458. This was quick and appropriate action, well justified by the circumstances, and did not in any wise curtail the power of the court to take whatever further action would otherwise have been lawful. He could probably have formally adjudged the appellants in contempt sooner than he did and filed the formal orders and certificates sooner, but that is quite beside the point because the few days delay did not legally prejudice them. Before their appeals were taken the original oral remands had been superseded by the formal orders and the filing of the certificates, all of which, and not the original orders alone, now form the basis for their sentences.

■ These formal orders were entered while the court had jurisdiction and in so far as time of entry is concerned are plainly valid. The certificates filed do comply with the requirements of Rule 42(a) of the Federal Rules of Criminal Procedure providing that a "criminal contempt may be punished summarily." And each "order of contempt" complies with them also. Within the meaning of the Rules of Criminal Procedure these "judgments" are orders of contempt which are not to be confused with the kind of judgments to which Rule 32 applies. It is enough that they were made and entered in accordance with Rule 42(a) and that these criminal contempts were procedurally punished summarily in compliance therewith.

■ The remaining question is whether the punishment was itself lawful. The statute, Sec. 401(1) of Title 18 U.S.C.A.

provides that contempts committed in the presence of the court may be punished by fine or imprisonment at the discretion of the court. And so the problem narrows down to whether the penalties imposed are sufficiently definite to be valid. Treating them on this phase of the appeal as though they were sentences, as indeed they are from a practical standpoint, we have reached the conclusion that they are valid. As to sentences, the general rule is, as stated in United States v. Daugherty, 269 U.S. 360, 363, 46 S.Ct. 156, 157, 70 L.Ed. 309, that they " * * * should reveal with fair certainty the intent of the court and exclude any serious misapprehensions by those who must execute them. The elimination of every possible doubt cannot be demanded." These penalties have a fixed date on which they began and their expiration date will coincide with the date on which the trial ends. It is true of course that that date cannot now be given a definite place on the calendar but it is a date which will be readily ascertainable upon its arrival and its arrival is an event sure to take place. The exact period in any given year or years when a sentence will be served need not be ascertainable in advance of such service as is demonstrated by the recognized validity of sentences to be served consecutively where the duration of the service of the first may be affected by parole. See Kirk v. Squier, 9 Cir., 150 F.2d 3. Moreover, indeterminate sentences where a statute provides for their imposition have been held valid despite any uncertainty as to the length of actual service under them because their expiration date is inherently indefinite. Sims v. Rives, 66 App.D.C. 24, 84 F.2d 871 certiorari denied, 298 U.S. 682, 56 S.Ct. 960, 80 L.Ed. 1402; Farnsworth v. Zerbst, 5 Cir., 98 F.2d 541. A sentence for life is always indefinite as to termination so far as the calendar is concerned, but no one could reasonably question its validity on that score.

As the orders of contempt comply with all applicable legal requirements, we find it unnecessary to determine whether the court could otherwise have lawfully remanded the appellants. Cf. Hirabayashi v. United States, 320 U.S. 81, 105, 63 S.Ct.

1375, 87 L.Ed. 1774. Whatever their right may have been to remain enlarged on bail during their trial before they committed their contempts in the presence of the court,[1] that did not give the appellants immunity from being punished summarily by imprisonment for such conduct.

Orders affirmed.

---

[1] Cf. United States v. Rice, D.C.S.D.N.Y., 192 F. 720; Hood v. United States, 8 Cir., 23 F.2d 472, certiorari denied 277 U.S. 588, 48 S.Ct. 436, 72 L.Ed. 1002.