## UNITED STATES v. GREEN.
### No. 288, Docket 21394.

United States Court of Appeals,
Second Circuit.

Argued July 1, 1949.

Decided July 14, 1949.
Writ of Certiorari Denied Oct. 17, 1949.
See 70 S.Ct. 91.

Emanuel H. Bloch, New York City, Walter F. Dodd, Chicago, Ill., George W. Crockett, New York City (Abraham J. Isserman, Los Angeles, Cal., on the brief), for appellant.

John F. X. McGohey, United States Attorney for the Southern District of New York, New York City, for appellee.

Frank H. Gordon, New York City, and Irving S. Shapiro, Washington, D. C., Special Assistants to the United States Attorney.

Edward C. Wallace, Special Assistant to the Attorney General.

Lawrence K. Bailey, Washington, D. C., Attorney, Department of Justice, of Counsel.

Before SWAN and CHASE, Circuit Judges and SMITH, District Judge.

CHASE, Circuit Judge.

This appeal is by one of the defendants being tried in the District Court for the Southern District of New York on an indictment charging conspiracy to violate the provisions of Title 18, § 10 U.S.C. [now 18 U.S.C.A. § 2385]. It is from an order of contempt remanding the appellant for the duration of that trial as punishment for a contempt committed in the presence of the court. The applicable statute is Title 18, § 401(1), which provides that:

"A court of the United States shall have power to punish by fine or imprisonment, at its discretion, such contempt of its authority, and none other, as—

"(1) Misbehavior of any person in its presence or so near thereto as to obstruct the administration of justice; * * *."

Other appeals by other defendants in the same suit from orders of contempt have been heard by this court and have been

---

affirmed in an opinion handed down contemporaneously with this opinion. In so far as the issues therein decided are the same as those here presented, we now refer to that opinion without further discussion of them. See United States v. Hall, 2 Cir., 176 F.2d 163, decided today.

Here, as before, the judge orally ordered the remand immediately after the contemptuous conduct and later, this time on the following day, filed an order of contempt, commitment and certificate in compliance with the provisions of Rule 42(a) of the Federal Rules of Criminal Procedure, 18 U.S.C.A. The following is a copy:

"On the 20th day of June, 1949, the defendant appeared in person and by counsel.

"It is adjudged that the defendant has been found guilty of contempt of court for misconduct committed in the presence of the Court in the course of the judicial proceedings as set forth below.

"It is adjudged that the defendant is hereby committed to the custody of the Attorney General or his authorized representative for imprisonment for the remainder of the trial in United States v. William Z. Foster, et al., C 128-87.

"In conformity with Rule 42(a), Federal Rules of Criminal Procedure, I hereby certify that the conduct for which the defendant is punished for criminal contempt was committed in my presence under the following circumstances:

"On June 20, 1949, at a session of the United States District Court for the Southern District of New York, the defendant Green was on the witness-stand giving testimony on direct examination by his counsel in respect to the charges on trial in United States v. William Z. Foster, et al., C 128-87. In the course of the morning session of the Court, the defendant undertook to answer a question which the Court had directed to his counsel, and after several unsolicited remarks by the defendant the Court stated to him:

"'Why do you keep making these outbursts? There is no question before you and you have been told by me so many times not to do it I should think you could make a special effort and not do it.'

"On the same day, during the afternoon session of the Court, defendant Green's counsel offered a document in evidence. Objection to its admission was sustained. At this juncture the following occurred:

"'Mr. Isserman: I would like to be heard on this, if the Court please. There are five or six different grounds why we deem this article relevant and material to the issues. I would like to be able to state my grounds to the Court.

"'The Court: It seems to me that it represents repetition of the point that has come up in a great variety of ways during the trial here, and I see no necessity for argument.

"'Mr. Isserman: I am asking for an opportunity—

"'The Court: What is that?

"'Mr. Isserman: I am asking for an opportunity to state the grounds.

"'The Court: Yes, I know, but because the question in various forms has so many times arisen here and because of the fact that every time I allow argument the jury is excused and it takes an hour or so before we can calm down again, I find that it is better not to do it. If I felt there was occasion for it I would allow the argument.

"'Mr. Isserman: Can I state for the record my grounds in seeking to have this admitted?

"'The Court: No. I think when a lawyer offers an exhibit, those things are not needed to be stated.

"'Mr. Sacher: Your Honor, this goes to show the intent of this witness. I think that having expressed itself years before the indictment is material.

"'The Court: Mr. Sacher, the intent of these defendants is an intent appearing on the face of the statute and requiring perhaps construction by me, but certainly not an intent as to every detail of every step of everything they do which if we were to stop to have a long statement by every witness of his intent on everything that he did would unduly prolong the case, and I do not consider it relevant.

"'Mr. Sacher: But Budenz has attacked the intent of every defendant here in re-

gard to democracy and democratic institutions.

" 'The Court: Well, Mr. Sacher, I do not desire any argument on this.

" 'Mr. Isserman: If the Court please, in respect to this exhibit I would like to make an offer of proof, if I may.

" 'The Court: Well, I take the same position that I have previously as to offers of proof. I don't think it is necessary to do it.'

"Immediately, the defendant who had no occasion to speak, turned to the bench and said in an angry, sarcastic manner: 'I thought we were going to be given a chance to prove our case. That article was germane to the very heart of the issue.' The jury was present while defendant Green interrupted the judicial proceedings with his contemptuous statement.

"The misconduct on the afternoon of June 20th was preceded not only by the warning at the morning session of the court, but also by prior misconduct that also had brought forth warnings which had gone unheeded.

"On May 18, 1949, it was necessary to recess the judicial proceedings after the co-defendant Potash had made an outburst in the course of the judicial proceedings and the defendant Green rose to his feet and commenced talking without the permission of the court. At that time defendant was represented by counsel who was present in the court room.

"On May 26, 1949, when the co-defendant Davis similarly rose in the courtroom and commenced an angry outburst in the midst of the judicial proceedings, the Court warned all of the defendants that disorder in the courtroom would not be tolerated. The Court said:

" 'Before you say very much I want to make a little observation. You know, you gentlemen have been bobbing up here, saying things and doing things that I did not consider were very proper to do, some of them rather—well, I won't characterize them because we all remember what you and your other defendants have said and done. This is the first time you have got up. Now I have determined here that I am going to have an orderly trial. I don't think in the early stages that any of you gentlemen really thought I meant what I said or that I would succeed.

" 'I have penalties at my disposal, if the defendants insist upon interrupting the proceedings and holding forth, although they have lawyers to represent them, and I dislike very much doing some of the things that the law places it in my power to do.

" 'Now, I just want you to remember that. I believe that the best way to go ahead here is for the defendants to just sit there and let your lawyers represent you instead of jumping up every once in a while to get your own comments in, and your own views, and I tell you, for your own good, I recommend that.'

"One week later, on June 3, 1949, defendant Green and all his co-defendants, except the defendant Gates, participated in a disturbance in the midst of the judicial proceedings, which led to the conviction for contempt of the co-defendants, Hall and Winston. At that time, the Court repeated its warning of May 26th, that 'if there was any further disorder by any of the defendants I should remand them.'

"On June 14, 1949, while the defendant was on the witness-stand, he commenced speaking when he had no occasion to do so. The Court reminded him that his counsel was present and admonished him that he should speak only in answering questions.

"Again on June 16, 1949, under similar circumstances, defendant Green interrupted colloquy between opposing counsel and the court, and proceeded to make a gratuitous statement. At that time, the Court repeated the admonition to him not to speak 'until a question is put to you.'

"The misconduct on the afternoon of June 20, 1949, was in the teeth of the several prior warnings of the Court and is a part of the pattern of misconduct in which defendant and his co-defendants have engaged for a considerable period of time, as set forth, in part, in the June 8, 1949, orders and certificates in United States v. Henry Winston and United States v. Gus Hall."

The only question which now needs to be dealt with, in view of our above men-

tioned decision, is whether the conduct of this appellant in open court as shown by this record was a contempt. That depends, of course, upon the result of a just and correct interpretation of the facts here shown in the light of the undoubted power and duty of the judge, as the representative of the judicial branch of the government, to control the proceedings according to customary legal usage.

The words spoken by the appellant obviously imply that, contrary to the speaker's expectation, the defendants were not being allowed to "prove our case" and that the exclusion of the offered pamphlet was an instance of such denial of their rights. He then was a witness on the stand undergoing direct examination by his own attorney and it was his proper function at the time to testify to facts relevant to the issues. What he did, however, was to volunteer an irrelevant statement of what he thought about rulings of the judge. This was done in the presence of the jury and in effect was an expression of his opinion that the jury was not being allowed to hear the defense which the defendants desired of right to make to the charge on which they were being tried.

 But we need not put decision on that alone and cannot treat it as though it had been an isolated, temperate and inadvertent instance of thinking out loud. It was said "in an angry, sarcastic manner" and followed repeated admonitions of the court given in an attempt to keep the witness from discoursing at length beyond the scope of responsive answers when, and as, he pleased. It also followed a serious disturbance in the court room some days before in which the witness had participated and which led to the orders of contempt which gave rise to the appeals considered by this court in United States v. Hall et al., previously mentioned. It also followed repeated and persistent failures of defendants on trial and of their attorneys to give much heed, if any, to patient efforts of the court to keep the trial within the bounds of orderly procedure.

This record fairly presents a series of events which if allowed to continue in the court room unchecked might well disrupt the trial and so flout the authority of the court that its effectiveness as an instrument of the judicial process would be much impaired if not destroyed. We think it abundantly clear that the appellant was guilty of a criminal contempt. Jones v. United States, 80 U.S.App.D.C. 109, 151 F. 2d 289; Cooke v. United States, 267 U.S. 517, 45 S.Ct. 390, 69 L.Ed. 767.

Order affirmed.