## MacINNIS v. UNITED STATES.

### No. 12599.

United States Court of Appeals
Ninth Circuit.

July 30, 1951.

---

William F. Cleary, San Francisco, Cal., for appellant.

Frank J. Hennessy, U. S. Atty., San Francisco, Cal., James M. McInerney, Asst. Atty., J. Frank Cunningham, Atty., Dept. of Justice, Washington, D. C., Robert B. McMillan and Joseph Karesh, Asst. U. S. Attys., San Francisco, Cal., for appellee.

Before STEPHENS, ORR and POPE, Circuit Judges.

STEPHENS, Circuit Judge.

Appeal from a summary judgment and sentence for criminal contempt imposed pursuant to Title 18 U.S.C.A. § 401(1) [1] and Rule 42(a), Federal Rules of Criminal Procedure, Title 18 U.S.C.A. [2]

Appellant MacInnis was one of counsel for the defense in the case of United States v. Bridges, D.C.Cal.1949, 87 F.Supp. 14. The following colloquy occurred on Wednesday, February 1, 1950, during the

---

1. "§ 401. Power of court.
    "A court of the United States shall have power to punish by fine or imprisonment, at its discretion, such contempt of its authority, and none other, as—
    "(1) Misbehavior of any person in its presence or so near thereto as to obstruct the administration of justice;".

2. "Rule 42. Criminal Contempt
    "(a) Summary Disposition. A criminal contempt may be punished summarily if the judge certifies that he saw or heard the conduct constituting the contempt and that it was committed in the actual presence of the court. The order of contempt shall recite the facts and shall be signed by the judge and entered of record."

examination of the witness Father Paul Meinecke, a priest of the Roman Catholic Church:

"The Court: Have you been recently subjected to medical treatment, Father?

"Mr. Hallinan: If the Court please, I am going to object to these questions.

"Mr. MacInnis: Let me in.

"Mr. Hallinan: I want to enter a legal objection. Your Honor has seen the Manning Johnsons, the Crouches, the Rosses and everybody get on that stand and we asked whether they were insane or not. I object to Your Honor's question. I object to that last question and assign that as misconduct, and I ask that the jury be instructed to ignore the implication of the question.

"The Court: There is no occasion for any admonition to the jury. Mr. MacInnis invited it.

"Mr. MacInnis: I never heard of such a question.

"The Court: Mr. MacInnis invited me to ask the question.

"Mr. MacInnis: Your Honor refused to do that and I asked a question.

"The Court: I have the greatest respect for men of the cloth, as we all have.

"Mr. MacInnis: You are demonstrating it.

"The Court: There is no impropriety in my questioning.

"Mr. MacInnis: I say there is.

"The Court: He asserted his present memory is not good. I asked him whether or not his recollection was good while he was here years ago. He said yes, it was good years ago. I don't see any reason for the criticism.

"Mr. MacInnis: When one of the prosecution witnesses was on the stand we asked him if he had received medical treatment, and now you ask a priest who comes here and gives testimony the same question.

"The Court: Ladies and gentlemen—

"Mr. MacInnis: I think you should cite yourself for misconduct.

"The Court: Ladies and gentlemen—

"Mr. MacInnis: I have never heard anything like that. You ought to be ashamed of yourself."

The following day, Thursday, February 2, 1950, the court announced that the conduct of MacInnis in the court's presence on the previous day constituted contempt, and that the certificate and order pursuant to Rule 42 of the Rules of Criminal Procedure, and the fixing of the punishment would be deferred to the end of the trial.

An order on contempt and accompanying certificate, dated February 28, 1950, were filed March 1, 1950, and MacInnis was ordered to appear before the court for sentence upon the termination of the Bridges trial.

On April 4, 1950, immediately after the verdict had been returned, MacInnis appeared and was sentenced to three months imprisonment.

Appellant's first specification of error is that none of the matters set forth in the certificate of contempt, taken either singly or collectively, constitute contempt.

██ Where counsel is of the opinion that prejudicial error has been committed during the course of a trial by counsel or by the court, it is his duty to seek to have it cured and to preserve his objection in the record if, in his opinion, the matter continues to be prejudicial. He never has the right to let his temper, his zeal, or his intention lead him into disrespectful, accusative language to the court. The trial court must of necessity maintain order and decorum in its presence. To sanction conduct such as is here involved in open court, before a jury, would be to demoralize the authority of the court before the jury and the public. See In re Oliver, 1948, 333 U.S. 257, 275, 68 S.Ct. 499, 92 L.Ed. 682.

True, a rule of caution must prevail where the contempt charged has in it the element of personal criticism or attack upon the judge. Cooke v. United States, 1925, 267 U.S. 517, 45 S.Ct. 390, 69 L.Ed. 767. However, as we held in Hallinan v. United States, 9 Cir., 1950, 182 F.2d

880, certiorari denied, 341 U.S. 952, 71 S. Ct. 1010, the fact that court and counsel disagree as to a ruling is no occasion for flagrant and open defiance of the court's authority. A sufficient record of counsel's objection to the court's statements had been made prior to counsel's statements to which the court took exception. There never could be occasion for disrupting the trial, thereby defeating the prompt administration of justice. See United States v. Green, 2 Cir., 1949, 176 F.2d 169, certiorari denied, 338 U.S. 851, 70 S.Ct. 91, 94 L.Ed. 521.

The act of addressing the court in open session with the statements "You should cite yourself for misconduct" and "You ought to be ashamed of yourself", unmodified, are, per se, contemptuous. And, in addition to the statements, the judge had full opportunity to observe the expression, manner of speaking, bearing and attitude of appellant. In these circumstances we cannot hold that no contempt had been committed. Fisher v. Pace, 1949, 336 U.S. 155, 69 S.Ct. 425, 93 L.Ed. 569, rehearing denied 336 U.S. 928, 69 S.Ct. 653, 93 L.Ed. 1089; United States v. Bollenbach, 2 Cir., 1942, 125 F.2d 458.

Appellant contends that since the conduct involved occurred on February 1, 1950, and the Order and Certificate of contempt were not signed until February 28, 1950, and the judgment was not pronounced until April 4, 1950, the postponement deprived the trial court of jurisdiction to proceed summarily under Rule 42(a).

On February 2, 1950, the day following the occurrence, the trial judge announced that after reading the transcript, he had concluded that appellant had on the previous day committed conduct in the actual presence of the court constituting contempt, and that a certificate and order would be filed pursuant to Rule 42, and that punishment would be deferred to a later date.

The power of the courts to punish contempts in the face of the court without further proof of facts and without aid of a jury is in accord with due process of law. Fisher v. Pace, supra. In Hallinan v.

United States, supra, we held that by waiting from the adjournment of court on the evening of November 21, 1949, until 9:30 A.M. of November 22, 1949, before pronouncing a judgment of contempt, was in accord with In re Maury, 9 Cir., 1913, 205 F. 626. The court did not lose jurisdiction to proceed under Rule 42(a). In the last cited case we held that jurisdiction to proceed summarily attached instantly upon a contempt being committed in the presence of the court and was not surrendered by the court by waiting until the next day before imposing judgment.

In United States v. Hall, 1949, 2 Cir., 176 F.2d 163, at page 168, certiorari denied, 338 U.S. 851, 70 S.Ct. 90, 94 L.Ed. 521, the court stated: "In the situation of disorder and confusion which the trial judge faced in his courtroom on June 3, 1949, there was neither the time nor the need for him to prepare and file any certificate under Rule 42(a), F.R.Cr.P., before taking such prompt and effective action as he could to quell the disturbance. * * * He could probably have formally adjudged the appellants in contempt sooner than he did and filed the formal orders and certificates sooner, but that is quite beside the point because the few days delay did not legally prejudice them. * * *" See In re Presentment by Grand Jury of Ellison, D.C.Del.1942, 44 F.Supp. 375.

United States v. Sacher, 2 Cir., 1950, 182 F.2d 416, 428, 429, certiorari denied 341 U.S. 952, 71 S.Ct. 1010, clearly distinguishes the cases relied upon by appellant. In addition, the court states: "It is evident from the specifications in the certificate that the judge was confronted with many contemptuous remarks by the appellants and many obstructive refusals to obey his orders. However, he took no immediate action to punish them for contempt. If he had done so, the result would have been to leave the indicted defendants without effective counsel or with the necessity of choosing new counsel—a procedure involving interminable delay. * * *"

We are in agreement with the conclusion reached in the Sacher case that "* * * immediate penal vindication of

the dignity of the court * * *", as used in Cooke v. United States, 1925, 267 U.S. 517, 536, 45 S.Ct. 390, 69 L.Ed. 767, means as speedy vindication as is practicable in the circumstances, and does not require steps which would break up a trial or frustrate the powers of the judge.

▮▮ We are of the opinion that while punishment should follow acts of contempt with reasonable promptness, the punishment need not follow instanter if, as in the case before us, such an imposition would endanger the due progress and termination of the trial.[3]

Appellant next contends that the Certificate of Contempt is insufficient in that it does not allege that any of the acts of appellant "disrupted, threatened to disrupt, tended to disrupt or was even intended to disrupt the orderly process of the court."

▮ The Certificate, which accompanies the Order on Contempt, relates the applicable facts. They definitely show disregard of the orders of the trial court accompanied with accusations of wrongdoing. Here is a wilful obstruction and disruption of the orderly conduct of the trial.

The claim is advanced that the record of the proceedings at the time of the pronouncement of sentence and judgment show that the sentence of three months' imprisonment was imposed not solely because of the alleged acts of contempt specified in the certificate but was imposed in part as punishment for unidentified and unspecified acts of appellant concerning which no certificate was made or filed.

The facts belie the claim. On Tuesday, April 4, 1950, at the conclusion of the trial, the trial judge took up the matters affecting counsel, stating, " * * * I desire to address myself briefly to Mr. Hallinan and Mr. MacInnis. And I say to you that from the beginning of this trial you have embarked upon a course of conduct designed and calculated to contemptuously provoke the court in the hope that such provocation would lead the court to commit error or plunge the case into a mistrial * * *." It was the proper function of the presiding judge to consider whether the conduct of counsel derived from overzealousness in the defense of his client or from a deliberate play to disrupt the proceedings. United States v. Sacher, supra. The court's remarks addressed to counsel after the verdict had been returned admirably show the poise of the judge and that the sentence was based upon the statements contained in the certificate in their frame of circumstance. The court's reference to the general conduct of counsel throughout the trial does not indicate that either the judgment of contempt or the punishment therefor rests upon such conduct. The court found appellant's statements to be contemptuous and measured the punishment to fit the offense. The court's remarks constitute an explanation of the fact that counsel's conduct other

---

**3.** In support of the point counsel cites Toledo Newspaper Co. v. United States, 1918, 247 U.S. 402, 38 S.Ct. 560, 62 L. Ed. 1186, dissenting opinion of Justice Holmes, majority decision overruled in Nye v. United States, 1941, 313 U.S. 33, 52, 61 S.Ct. 810, 85 L.Ed. 1172; Cooke v. United States, 1925, 267 U.S. 517, 45 S.Ct. 390, 69 L.Ed. 767; In re Oliver, 1948, 333 U.S. 257, 68 S.Ct. 499, 92 L. Ed. 682. We concede that some of these cases contain language of comfort to him. We think, however, that the law does not require the interruption of the trial by immediate sentence upon summary holding for contempt. Recent attempts by attorneys to obstruct the due process of justice have demonstrated that immediate sentence could, and in some cases would, lead directly to the contemnor's success in using unethical and unprovoked tactics to delay and defeat the court's progress in the administration of justice. We concede also that there is some logic in appellant's contention on the instant point, as recited in the Toledo case, supra, but we think the better view is as is held in United States v. Sacher, 2 Cir., 1950, 182 F.2d 416, and in our own recent case of Hallinan v. United States, 9 Cir., 1950, 182 F.2d 880, certiorari denied 344 U.S. 952, 71 S.Ct. 1010. We recognize that admonishment has followed admonishment, that refusal of the Supreme Court to grant certiorari is not a holding as to any point presented in the petition for certiorari. But where two important theories clash we, as an intermediate court, can take some comfort at least from the fact that the denial is not inconsistent with our views.

than the contemptuous remarks was such that the contemptuous statements would not be condoned.

The punishment adjudged is not excessive. Punishment for contempt committed in the presence of the court is within the court's sound discretion and in the absence of an abuse thereof will not be disturbed on appeal. United States v. Landes, 2 Cir., 1938, 97 F.2d 378; United States v. Bollenbach, 2 Cir., 1942, 125 F.2d 458. The three months' sentence is not severe to the extent that it constitutes an abuse of judicial discretion.

Affirmed.