PARMELEE TRANSPORTATION COMPANY, a Delaware corporation, Plaintiff,

v.

John L. KEESHIN et al., Defendants.

In the matter of criminal contempt of Lee A. FREEMAN, Respondent-Appellant.

No. 13176.

United States Court of Appeals Seventh Circuit.

July 10, 1961.

Lee A. Freeman and Brainerd Currie, Chicago, Ill., for appellant.

James P. O'Brien, U. S. Atty., John Peter Lulinski, Asst. U. S. Atty., Chicago, Ill., for appellee.

Before DUFFY, SCHNACKENBERG and CASTLE, Circuit Judges.

SCHNACKENBERG, Circuit Judge.

Lee A. Freeman, respondent, has appealed from an order of the district court entered by Judge Julius H. Miner thereof, on June 30, 1960, D.C., 186 F.Supp. 533, adjudging him guilty of criminal contempt and sentencing him to confinement for a period of ten days on each of four specifications set forth in said contempt order, said sentences to run concurrently. The alleged acts of contempt occurred in connection with the trial of the case of Parmelee v. Keeshin,[1] in which respondent was co-counsel for plaintiff with Thomas C. McConnell.

█ 1. Specification 1 reads as follows:

"On April 28, 1960, in the presence and hearing of the jury, the following occurred:

" 'By Mr. Freeman: Was the railroad service limited in substantial respects with respect to the railroad passengers that had available to them these transfer coupons?

" 'By Mr. Keating: Same objection, as a conclusion.

" 'By the Court: The same ruling.

" 'By Mr. Freeman: That is crazy.' "

During a jury trial required by the court on the sole issue of public injury, over the objection of counsel in the case, and in the presence of the jury, Benjamin F. Goldstein, a witness called by plaintiff, was testifying, under examination by respondent. The court sustained objections to certain questions put by respondent who remarked, "that is crazy."

We have carefully read the record of proceedings and believe that it can be reasonably inferred that the last remark of respondent was addressed to his co-counsel, Mr. McConnell, and was not intended to be heard by either the court or the jury. Certainly the record fails to show that Judge Miner took any notice whatever of the remark at the time.

1. An appeal in this case was decided in this court, as case No. 13160, on June 30, 1961. 292 F.2d 794.

When the jury had been excused for the day, respondent's opposing counsel said:

"I would just like to say that I appreciate that it is difficult perhaps for counsel for the plaintiff, sitting within three or four feet of the jury, to confer at all without conveying it in such a fashion the jury will overhear it.

"I overheard one of the remarks this afternoon, clear over in my seat, which is twice as far away as the jury is."

Whereupon respondent answered:

"You don't have to say any more, Mr. Thompson. If I did do that, it was certainly inadvertence, and we will, if there is any conferring, it will be in the lightest whisper. We certainly understand what you suggest is entirely proper."

Whereupon the court stated:

"I think that covers that with the jury and with counsel."

We hold that contumacious conduct has not been proved under specification 1.

█ 2. Specification 2 reads as follows:

"On April 29, 1960, out of the presence and hearing of the jury but in open court, Mr. Freeman made the following statement to the Court:

" 'Your Honor, may I, with all deference, inquire whether or not this memorandum that was entered by you on December 6 has any significance or shall it be completely ignored?

" 'It seems to be, Your Honor, that you are willing to ignore those instances, and I will point out another one to Your Honor where you have ruled that documents are admissible, but at any time I seek to present a document that you have ruled admissible, there is a waving of arms on my learned counsels' side, and an immediate denial.

" 'I think, Your Honor, that if there is to be a reconsideration of this memorandum, it should be reconsidered for both sides and not for one side, and let me just in this connection point out that you have during the course of this trial rejected the Soo Line exhibits, which are exhibits, Plaintiff's Exhibits 11, 12 and 13.

" 'These three documents were submitted in our list of documents that we intended to offer as Item 43, and there was an objection made by the defendant railroads joined in by counsel for the other defendants, that these documents were internal documents, immaterial and hearsay, and on page 9 of this memorandum of opinion that you rendered on December 2, 1959, on page 5, rather, those objections are overruled.

" 'The Soo line memoranda are to be considered admissible there and Your Honor has changed his ruling again, and it occurs to me, and I say it again with all due deference, that no favorable ruling that we have gotten in the past from you will stick, but every unfavorable ruling will be reiterated, and I don't think that is a fair trial.' "

Repeatedly expressing deference, respondent made inquiry of the court about a ruling which he obviously intended to inform the court was confusing to him. We are inclined to think that respondent was sincere in his attitude because of the rather dubious language used by the court in the memorandum about which he inquired. This is the court's own language from the memorandum:

"All documents the objections to which are here overruled are rendered not inadmissible only to the extent that the Court will permit plaintiff to tender them for admission into evidence at the time of trial. Documents here ruled inadmissible may not be so tendered at the trial. Whether any document, not by these rulings rendered inadmissible, will be admitted into evidence at the trial is a question reserved by

the Court for ruling at the time of its tender by plaintiff at the trial.

"Any document to which defendants' objections are here sustained may, upon approval by the Court, become admissible, notwithstanding, only for purposes of impeachment, and then only to prove the inaccuracy of specific facts testified to on direct examination, in which case the document herein ruled inadmissible may be admitted into evidence if it patently and explicitly, not as a matter of inference or implication, states the fact concerning which the direct testimony is being controverted."

In this court it is the contention of counsel for respondent that the meaning of this language is that rulings against the plaintiff were final, whereas rulings against the defendant were tentative only, and that the defendants, and they alone, were to have the privilege of a second ruling. Whether this be correct or not, we believe that a situation existed which created a doubt in respondent's mind and that he was in good faith attempting, with *due deference,* to clear up that doubt by a reasonable inquiry and that his conduct in that regard was respectful and did not constitute contempt of court.

■ 3. Specification 3 reads as follows:

"Repeatedly during the course of the trial Lee A. Freeman conducted himself in a contumacious manner by employing a tone of voice and an attitude indicating contempt and defiance of the Court, by sneering and laughing on occasions when the Court ruled against him and by disregarding admonitions of the Court with respect to his conduct before the jury."

It contains no citation of any part of the record to support it and it is too general to require an answer by respondent or a definitive ruling by this court, as we held in reference to specification 7 in No. 13175, In the matter of criminal contempt of Thomas C. McConnell, July 6, 1961.

■ 4. Specification 4 reads as follows:

"On January 26, 1960, in the presence of the Court before the jury was impaneled during the course of a hearing on its memorandum dated December 4, 1959, which constituted the Court's rulings on the admissibility of numerous documents which had been tendered by the plaintiff for use in the trial and objected to by the defendants, Mr. Freeman, among other things, referred to several of the Court's December 4th rulings as demonstrating 'a sardonic sense of humor', * * * thereby charging the Court with bitter, heartless, scornful, insincere and disdainful conduct. The Court referred specifically to the above quoted statement of counsel (at page 9 of the memorandum), as well as to other abusive remarks of counsel, and ruled that there was no merit to counsel's objections to and arguments upon the Court's pre-trial memorandum, dated December 4, 1959 aforesaid."

It will be noted that the events involved in this specification occurred more than three months before the trial in Parmelee v. Keeshin began. The phrase "a sardonic sense of humor" appeared, when spoken by respondent, in the following context:

"* * * You exclude the Forgash documents, and I have already discussed that, but here I must call your attention to 14 and 16 where you have excluded all of the documents except Forgash Exhibit 1, and Ryan Exhibit No. 1.

"This, I construe as a sardonic sense of humor, because those two documents are the subpoenas that we served on Forgash, the subpoena that we served on Ryan to produce these documents that you now say are inadmissible, and you tell us that we can, before the jury, present to

the jury the subpoenas that we served on them and nothing else.

"I think it was the result of a misapprehension, your Honor. I think it was the result of a misconception of what was involved here. I think you have been imposed upon, as I say."

█ Read in context, we have difficulty in attributing to the phrase "a sardonic sense of humor" misconduct which obstructed the court in the performance of its judicial duty.[2] The presence of that element must clearly be shown in every such case where the power to punish for contempt is exerted. Ex parte Hudgings, 249 U.S. 378, 383, 39 S.Ct. 337, 63 L.Ed. 656. Moreover, in determining whether there has been any obstruction of the court's performance of its judicial duties, the reasonably to be expected reactions of those in the courtroom to the words or acts under scrutiny are relevant. If there was such obstruction resulting from what respondent said, that should be ascertained from the record of what occurred at the time. Citation for direct contempt should not be delayed for months. It should spring fresh from the alleged obstruction of the court's performance of its judicial duty, although adjudication and punishment might well await the convenience of the court's business. The record suggests that the words used by respondent were not considered by the judge as derogatory when spoken. At that time he took no exception, made no protest, admonition or request for apology, and gave no notice of the remark. Instead the judge proceeded with a discussion about the documents under consideration.

The court on March 10, 1960, more than two months after the words were spoken, referred *inter alia* to the statement that it had "a sardonic sense of humor" and disposed of that and other matters by saying merely that "The court

is unable to find any basis for these charges."

The court waited more than five months after the alleged contempt had been committed, and only then specified the contempt charges and entered the order from which this appeal has been taken. The very fact that in the meantime various proceedings, including a long-drawn-out trial, had occurred, is rather conclusive evidence that these words of respondent in no way obstructed the court in the performance of its judicial duty, an element that must be clearly shown in every case where the power to punish for criminal contempt is exercised. The language of specification 4 suggests that, when the processes of the court in this litigation had at a later date ground to a conclusion, the judge adopted a dictionary definition of the word "sardonic" and embodied it in specification 4. We must however bear in mind that the test of contumaciousness of words spoken during a court proceeding is their effect as contemporaneously understood by those who heard the words spoken in the courtroom. This includes the judge as well as other persons present. If no one in the courtroom either knows the meaning of the words spoken or then consults a dictionary as to their meaning, we doubt whether justice has suffered and that a contempt has occurred. However that may be, the meaning of a spoken word used in a courtroom during a judicial proceeding cannot months later be learned and used retroactively to punish the speaker when only he (if anyone) knew the meaning of the word when he used it.

On the record before us, we hold the respondent was not proved guilty under specification 4.

In accordance with the reasons which we have stated, the order from which this appeal has been taken is reversed.

Order reversed.

2. Vol. VIII, The Oxford Dictionary, 110, points out the path which "sardonic" has traveled in English literature. For instance, in 1675, Hobbes Odyssey xx, 276 recorded: "Then smil'd Ulysses a Sardanique smile."