**UNITED STATES of America,
Appellee,**

v.

**Charles Clark MARSHALL, III, et al.,
Appellants.**

**No. 26889.**

United States Court of Appeals,
Ninth Circuit.

Nov. 18, 1971.

Murrah, Senior Circuit Judge, filed opinion concurring in part and dissenting in part.

Michael E. Tigar (argued), San Francisco, Cal., Dennis J. Roberts, of Kennedy & Rhine, San Francisco, Cal., Carl Maxey, Spokane, Wash., Jeffrey Steinborn, Lee A. Holley, Seattle, Wash., for appellants.

Charles W. Billinghurst, Asst. U. S. Atty. (argued), Stan Pitkin, U. S. Atty., Michael P. Lerner, Seattle, Wash., for appellee.

Before MURRAH,[*] KOELSCH and BROWNING, Circuit Judges.

PER CURIAM:

The defendants were indicted under 18 U.S.C. §§ 2101, 1361 and 371, for alleged depredation of federal property in Seattle, Washington. Their trial commenced in the Western District of Washington on November 23, 1970, and continued until December 10, 1970, when the court declared a mistrial and summarily cited six of the seven defendants for criminal contempt.

The trial judge issued the first certificate of contempt in open court on December 14, 1970. During that session disruptions occurred which gave rise to the issuance of a second contempt certificate.[1] Each of the certificates imposed a six-month sentence on the cited defendants.[2]

Defendants appeal asserting (1) that their conduct was not contumacious within the meaning of 18 U.S.C. § 401(1),[3] and (2) that the summary procedure was inappropriate. We reverse and remand for further proceedings consistent with this opinion.

We start with the proposition recently stated by Mr. Justice Black in Illinois v. Allen, 397 U.S. 337, 343, 90 S.Ct. 1057, 25 L.Ed.2d 353 (1970), that "it is essential to the proper administration of criminal justice that dignity, order and decorum be the hallmarks of all court proceedings in our country." To that end, the courts from the very beginning have been empowered to punish for contempts of their authority to conduct an orderly public trial. Judiciary Act of 1789 (1 Stat. 73, 83). See also 4 Blackstone's Commentaries 286.

■ The substantive offense as carried forward in the statutes from the Judiciary Act of 1789 has historically consisted of two classes: (1) direct and (2) indirect. Direct contempt is misbehavior having the effect of interfering with the orderly conduct of a trial occurring "under [the court's] own eye and within its hearing." Ex parte Terry, 128 U.S. 289, 9 S.Ct. 77, 32 L.Ed. 405 (1888). Indirect contempt is contumacious behavior occurring beyond the eye or hearing of the court and for knowledge of which the court must depend upon the testimony of third parties or the confession of the contemnor.

Agreeably to these classifications, Rule 42 Fed.R.Crim.P., provides two separate procedures for trying and punishing contemptuous behavior.[4] Even a

---

[*] The Honorable Alfred P. Murrah, Senior Circuit Judge of the Tenth Circuit, sitting by designation.

1. Both certificates are attached as appendices. Each incorporates by reference the entire transcript.

2. The first contempt certificate cited defendants Marshall, Dowd, Kelly, Abeles, Lerner and Lippman. Defendant Stern was not cited. The second contempt certificate cited those named in the first certificate with the exception of defendant Lerner and included defendant Stern.

3. 18 U.S.C. § 401 states in pertinent part:
"A court of the United States shall have power to punish by fine or imprisonment, at its discretion, such contempt of its authority, and none other, as—
"(1) Misbehavior of any person in its presence or so near thereto as to obstruct the administration of justice.
* * * *"

4. Rule 42, Fed.R.Crim.P., provides:
"(a) Summary Disposition. A criminal contempt may be punished summarily if the judge certifies that he saw or heard the conduct constituting the contempt and that it was committed in the actual presence of the court. The order of contempt shall recite the facts and shall be signed by the judge and entered of record.
"(b) Disposition Upon Notice and Hearing. A criminal contempt except as provided in subdivision (a) of this rule shall be prosecuted on notice. The notice shall state the time and place of hearing, allowing a reasonable time for the preparation of the defense, and shall state the essential facts constituting the criminal contempt charged and describe it as such. The notice shall be given orally by the judge in open court in the presence of the defendant or, on application of the United States attorney or of an attorney appointed by the court for

cursory reading of the rule, "substantially a restatement of existing law, Ex parte Terry, 128 U.S. 289 [95 S.Ct. 77, 32 L.Ed. 405]; Cooke v. United States, 267 U.S. 517, 534 [45 S.Ct. 390, 69 L.Ed. 767]," Offutt v. United States, 348 U.S. 11, 13–14, 75 S.Ct. 11, 99 L.Ed. 11 (1954), reveals that the two procedures are essentially different, and defendants vigorously assert that the trial court improperly invoked direct contempt powers under subsection (a) rather than indirect contempt powers under subsection (b).

■ The phrase "in the actual presence of the court" delimits the class of contempts cognizable under subsection (a) and reflects the case law requirement that summary procedure may be employed only for the trial and punishment of direct contempts, i. e. those which occur "under [the] eye and within the hearing" of the court. Ex parte Terry, *supra*. See also Cooke v. United States, 267 U.S. 517, 45 S.Ct. 390, 69 L.Ed. 767 (1925); and In re Oliver, 333 U.S. 257, 68 S.Ct. 499, 92 L.Ed. 682 (1948). It means no less than that the use of summary power is proper only if the trial judge actually witnesses the misbehavior deemed contumacious. Cooke v. United States, *supra*. In Rule 42(a) cases, the judge is his own best witness of what occurred. If he must depend upon the testimony of other witnesses or the confession of the contemnor for his knowledge of the offense, Rule 42(a) does not apply.

The ever present danger that these summary powers may be abused has brought us to view their exercise with caution and circumspection. Anderson v. Dunn, 19 U.S. 204, 6 Wheat. 204, 5 L.Ed.2d 242 (1821); Nye v. United States, *supra;* Pietsch v. President of United States, 434 F.2d 861 (2d Cir.).[5]

This means, among other things, "that the procedural safeguards that the Rule provides must be strictly adhered to lest the drastic power authorized escape the permissible limits of reason and fairness." Pietsch v. President of United States, 434 F.2d 861, 864 (2d Cir. 1970) (Justice Clark).

One of the procedural safeguards provided by Rule 42(a) is that the order entered by the judge "shall recite the facts"—"the facts," in this context, being "the conduct constituting the contempt," which the judge must certify he "saw or heard" "committed in the actual presence of the court."

This recitation of the facts in the certificate is of critical importance. "A criminal contempt order like any other conviction of crime must stand or fall on the sufficiency of the specifications of wrongdoing upon which it is based." Tauber v. Gordon, 350 F.2d 843, 845 n. 1 (3d Cir. 1965). As this court said in Hallinan v. United States, 182 F.2d 880, 882 (9th Cir. 1950), "if the judgment is to be sustained the conduct complained of in the certificate must in itself constitute contempt." *See also* Parmelee Transp. Co. v. Keeshin, 294 F.2d 310, 316 (7th Cir. 1961), rev'd on other grounds sub nom. In re McConnell, 370 U.S. 230, 82 S.Ct. 1288, 8 L.Ed.2d 434 (1962).

The reason for this requirement is obvious. Because the defendant has been

---

that purpose, by an order to show cause or an order of arrest. The defendant is entitled to a trial by jury in any case in which an act of Congress so provides. He is entitled to admission to bail as provided in these rules. If the contempt charged involves disrespect to or criticism of a judge, that judge is disqualified from presiding at the trial or hearing except with the defendant's consent. Upon a verdict or finding of guilt the court shall enter an order fixing the punishment."

5. A respected professional group recently recommended against the use of summary procedure under any circumstances, stating, "such procedure has little to commend it, is inconsistent with the basic notions of fairness and is likely to bring disrespect upon the court." ABA Standards, the Judge's Role in Dealing with Trial Disruptions, § F.4 (Tentative Draft, May 1971).

convicted without notice or hearing, there is no record of the conviction upon which appellate review may be based. The factual recitation in the certificate supplies this deficiency. Accordingly, "[t]his requirement is more than a formality. It is essential to disclosure of the basis of decision with sufficient particularity to permit informed appellate review." Tauber v. Gordon, *supra*, 350 F.2d at 845. *See also* Parmelee Transp. Co. v. Keeshin, *supra*, 294 F.2d at 315–16; *cf.* Great Lakes Screw Corp. v. N.L.R.B., 409 F.2d 375, 379–80 (7th Cir. 1969).

"[I]nformed appellate review" is possible only if the facts are stated in sufficient detail for the appellate court to determine whether the conduct upon which the conviction rests was contemptuous, factually and legally; whether it was of such character, and occurred in such circumstances, as to permit summary conviction under Rule 42(a) [6], and because Rule 42 sentences are subject to appellate review and revision,[7] whether the conduct relied upon justified the sentence imposed.

■ This means that the judge must recite the specific facts upon which the contempt conviction rests. Conclusory language and general citations to the

record are insufficient.[8] Here neither certificate meets this standard.

The first certificate appears to base the contempt convictions upon *both* the specific misconduct of December 10 *and* the totality of misconduct during the prior ten days of trial. The judge states that the summary contempt is based upon "misconduct," which he describes as "actions, language, and other unjustified trial disruptions and inexcusable delays in trial proceedings." He then certifies that he personally saw this "misconduct" "during eleven trial days" (App. I at i). He concludes "that the totality of defendants' long continued and repeated misconduct hereinabove specified in obvious defiance of admonitions and warnings by the Judge concerning defendants' misconduct in the courtroom, occurring frequently and in the presence of the jury, and the final culmination of such course of repeated misconduct that occurred on Thursday morning December 10, 1970, all of which misconduct, including the final episode, occurred in the actual presence of the Judge and was personally seen and heard by the Judge, constituted a contempt" (App. I at vi).

■ Assuming that the specific incidents of December 10 relied upon in the first certificate [9] are sufficiently

---

6. For example, as noted later, the defendants' refusal to come to the courtroom and Dowd's alleged misconduct at the door of the reception room were not punishable under Rule 42(a) because they were not personally observed by the trial judge; but if he had not revealed his specific reliance upon these incidents in his certificate, the error could not have been discovered on appeal.

7. Green v. United States, 356 U.S. 165, 188, 78 S.Ct. 632, 2 L.Ed.2d 672 (1958). *See also* Yates v. United States, 356 U.S. 363, 366, 78 S.Ct. 766, 2 L.Ed.2d 837 (1958).

8. The authorities supporting this rule are legion. Many of the recent cases are collected at 3 C. Wright, Federal Practice & Procedure § 708, at 170. *See, e. g.*, Pietsch v. President of United States, 434 F.2d 861, 863–864 (2d Cir. 1970); Great Lakes Screw Corp. v. N.L.R.B., 409 F.2d 375, 379–80 (7th Cir. 1969); Tauber v. Gordon, 350 F.2d 843, 844–845 (3d

Cir. 1965); United States v. Galante, 298 F.2d 72, 75 n. 1 (2d Cir. 1962); Parmelee Transp. Co. v. Keeshin, 294 F.2d 310, 314–315 (7th Cir. 1961); Parmelee Transp. Co. v. Keeshin, 292 F.2d 806, 809 (7th Cir. 1961); Widger v. United States, 244 F.2d 103, 107 (5th Cir. 1957). For earlier authorities see 154 A.L.R. 1227 (1945).

9. It is possible that some of the misconduct specifically described in the first certificate is not relied upon. For example, the certificate recites that on Wednesday "defendant Abeles interrupted proceedings with a contumacious remark" (App. I at iii). The intent, however, seems to be to show that defendants were warned about any further misconduct. Again, in describing Thursday's events, the first certificate recites defendants' failure to appear in the courtroom and the incident in the hallway. It then notes Marshall's remarks to the jury. The very next paragraph, however, speaks only of "[t]he

identified, the contumacious conduct at other times during the trial clearly is not. The judge's description of this latter conduct is set out in the margin.[10] Such conclusory statements, unsupported by specific references to the record, are insufficient. *See* note 8, *supra*.

The second certificate also reveals that the judge relied upon all the misconduct described in that certificate and found that it constituted a single contempt by each defendant charged. The final paragraph states *"that all of the above described misconduct occurred in the actual presence of and was personally seen and heard by the Judge, and that such misconduct constituted a contempt"* (App. II at ix–x) (emphasis added).

The misconduct is described in the second certificate as follows:

"Stern's defiance of the directions, orders and warnings by the court in continuing her remarks precipitated loud, boisterous and violent actions and language in which the Judge saw and heard defendant Stern and each defendant other than Lerner personally participate. Riotous conduct and an incipient riot occurred in the courtroom. [After] the Judge left the courtroom * * * at least for a half hour or more scuffling and loud and boisterous language in the courtroom could be heard in the Judge's office. * * * During the miscon-

duct above specified, proceedings in court were at a standstill and could not be resumed for more than an hour" (App. II at ix).

The misconduct relied upon, then, began when Stern refused to stop speaking and ended about a half hour *after* the judge had left the courtroom. Thus the convictions described in the second certificate rested in part upon conduct that occurred outside the judge's presence, not punishable summarily under Rule 42(a).

Except for the description of Stern's refusal to stop speaking, the second certificate is far too general to satisfy Rule 42(a). The cases cited in note 8 reject as inadequate language no more conclusory than the second certificate's allegation of "loud, boisterous and violent actions and language in which * * Stern and each defendant other than Lerner personally participate[d]," "[r]iotous conduct and * * * incipient riot," and "scuffling and loud and boisterous language."

While the certificate does, by reference, incorporate the entire transcript, this does not satisfy the specificity requirement of Rule 42(a).

First, the certificate contains no citations to particular passages in the transcript. Incorporation of the entire transcript by general reference does not correct deficiencies in the certificate.[11] The

---

gross misconduct of defendants in refusing * * * to come to the courtroom, and their misconduct in the corridor" (App. I at v). As there is no further mention of the Marshall incident, it is arguable that it is not being relied upon. Nor is it clear that the misconduct of all defendants in the hallway is being relied upon. While the certificate includes all defendants by reciting "their misconduct in the corridor" (App. I at v), it names only three of them in describing the disturbance (App. I at v).

10. "The trial judge saw and heard misconduct of defendants in the courtroom frequently every day for ten days prior to Thursday, December 10, 1970, consisting of: Standing, vocal and obviously pre-arranged demonstrations by spectators, sometimes led by one or more defendants

and joined in by all; shouting epithets, sometimes threats of violence and profanity, and other improper language accompanied by a variety of disorderly movements and actions; interruptions by one or more or all defendants in qualification of the jury, exercise of challenges, opening statement for the plaintiff, examination of witnesses, offering of exhibits, making and hearing of objections, rulings and statements of the Judge, and in various other phases of trial proceedings" (App. I at v).

11. Pietsch v. President of United States, 434 F.2d 861, 864 (2d Cir. 1970); Great Lakes Screw Corp. v. N.L.R.B., 409 F.2d 375, 379–380 (7th Cir. 1969); United States v. Schiffer, 351 F.2d 91, 94 (6th Cir. 1965); Tauber v. Gordon, 350 F.2d 843, 845 n. 1 (3d Cir. 1965); United

transcript can assist the appellate court in performing its function only if the specific facts constituting the contempt are clearly identified in the certificate.[12]

This may seem overly technical here since the misconduct relied upon began when Stern refused to stop speaking and the reporter's transcript of what occurred thereafter comprises but three pages (R.T. 2119–21). The point is, however, that the reporter's transcript may not reflect the particular conduct that the judge saw and heard and that he relied upon.

Much that the judge saw and heard may not be reflected in the transcript. The trial judge recognized this: he sought to incorporate in the second certificate not only the reporter's transcript but also the reporter's recordings and the audio and video tapes (App. II at viii).

Even this, however, is insufficient. If these records reflected contumacious conduct we could still not be sure that the judge saw or heard that particular conduct, as he must have to justify conviction under Rule 42(a). We can be sure that this prerequisite to conviction under Rule 42(a) is satisfied *only* if the judge himself recites or unmistakably refers to the particular facts upon which he relies and certifies that he personally witnessed them. And that is true, of course, even as to conduct that *is* reflected in the reporter's transcript.

In short, the requirement of Rule 42 (a) that the judge state the facts upon which he relied, and certify that they occurred in his presence and that he witnessed them personally, has not been

satisfied. There is no basis upon which we may dispense with this requirement.

The judge was faced with a tumultuous, confused, and confusing situation. It might have been difficult for him to immediately draw a certificate specifically describing the improper conduct of each defendant. But this does not justify the procedure followed.

■ First, to the extent that the problem was lack of time, he could have cited and punished the defendants for contempt immediately but prepared the certificate at his leisure. *See*, e. g., MacInnis v. United States, 191 F.2d 157, 160 (9th Cir. 1951); United States v. Hall, 176 F.2d 163, 168 (2d Cir. 1949). The function of the certificate is not to give notice to the defendant or to frame an issue to be tried, but solely to permit an appellate court to review the judge's action.

Second, if the situation was so confused that the judge could not clearly observe and accurately record what each defendant had done, summary conviction was simply inappropriate. At we have noted, the theory of Rule 42(a) is that no hearing is necessary because the judge already knows the facts. If he does not know the facts, a hearing is necessary to discover what the facts are. If, despite the uncertainty, no evidentiary hearing is had, the obvious risk is that innocent persons may be summarily adjudicated and punished.[13]

There was ample evidence from which the facts could have been determined— including testimony of the numerous marshals present in the courtroom, and a video tape recording of much of the proceeding. Such a hearing could have

States v. Galante, 298 F.2d 72, 75 n. 1 (2d Cir. 1962); Parmelee Transp. Co. v. Keeshin, 294 F.2d 310, 314 (7th Cir. 1961); Parmelee Transp. Co. v. Keeshin, 292 F.2d 806, 809 (7th Cir. 1961); Hallinan v. United States, 182 F.2d 880, 882 (9th Cir. 1950).

12. United States v. Schiffer, 351 F.2d 91, 94 (6th Cir. 1965); Widger v. United States, 244 F.2d 103, 107 (5th Cir. 1957); MacInnis v. United States, 191 F.2d 157,

161 (9th Cir. 1951); 3 C. Wright, Federal Practice & Procedure § 708, at 170–71.

13. Even if all convicted defendants participated in the disturbance, it seems likely that some were more culpable than others and hence deserve harsher punishment. By demonstrating which defendant did what, a hearing would provide a basis for informed sentencing.

been held on Monday, entailing no more delay than actually occurred.[14] It is clear from the transcript that when the judge recessed on Thursday that was in fact his intention.

The adjudications are vacated and the matters are remanded to the district court to conduct, in its discretion, proceedings pursuant to Rule 42(b), Fed.R. Crim.P.[15]

MURRAH, Senior Circuit Judge (concurring and dissenting):

There is no disagreement concerning the applicable law of contempt. We are agreed that the trial court was empowered to punish for any contempt of its authority to conduct an orderly public trial. It also seems indisputable that contempt is not only evidenced by spontaneous outburst or an isolated instance of misconduct, it may well lie in a subtle, persistent course of action aimed at obstructing an orderly trial. And we, of course, agree that powers of contempt may be exercised summarily only if the judge sees or hears the conduct cited as contumacious. My associates do not suggest that the conduct reflected on this record was not contumacious. Apparently we disagree only on the point of specificity, i. e., whether the citations are sufficiently specific to provide a factual basis for "informed appellate review." Tauber v. Gorden, 350 F.2d 843, 845 (3rd Cir. 1970).

The first citation is predicated upon a course of conduct from the commencement of the trial to a declaration of mistrial. The Thursday morning disturbance in the corridor, as the judge was returning from the defendants' confer-

ence room, did occur in his actual presence. But the judge also seemed to rely on the earlier pounding on the door of his chambers before court opened and the alleged refusal of the defendants to come to the courtroom after court opened Thursday morning. He did not identify the person pounding on his door from personal knowledge and there was a factual dispute as to who did it. There was also a dispute whether the defendants did, in fact, refuse to come to the courtroom. In these circumstances, I am willing to resolve any doubts against the exercise of the summary contempt power and agree to the remand of the first certificate for a Rule 42(b) hearing.

I cannot agree that the contumacious behavior of the parties at the Monday morning proceedings on the first contempt citation was not sufficiently specified in the second certificate to permit "informed appellate review." A reading of the whole record is essential to an understanding and appreciation of the contemptuous nature and tone of the proceedings, but excerpts from the record will serve to characterize the conduct which precipitated the second contempt certification and to identify the defendants with the collective misconduct.

It is important to understand that a mistrial had been declared on Thursday because of the defendants' conduct; the parties were adjudged in contempt; and the proceedings adjourned until Monday when the parties were ordered to appear for sentence. When court opened on Monday morning, the judge first entered an order confirming the mistrial and then ordered the filing of the first contempt certificate. When he attempt-

14. As noted earlier, the second certificate shows that the misconduct relied upon included some that occurred after the judge left the courtroom. It would therefore be necessary, at the least, to remand for resentencing. If the defendants were to receive their just punishment, there would also have to be a hearing under Rule 42(b) as to the misconduct that the judge did not witness personally.

15. The trial judge was the frequent target, during both the criminal trial and the pro-

ceedings on December 14, of numerous opprobrious epithets and insulting characterizations. Since the need no longer exists for immediate penal vindication of the dignity of the court, we suggest that the trial judge give serious consideration to the decided advantages of having another judge conduct further proceedings. See Mayberry v. Pennsylvania, 400 U.S. 455, 91 S.Ct. 499, 27 L.Ed.2d 532 (1971). Justice must also satisfy the appearance of justice.

ed to read the first contempt certificate, narrating a course of conduct beginning on the first day of trial and ending with the declaration of a mistrial, Marshall interjected a vulgar and plainly contemptuous word which we will not put on this record. At the conclusion of the reading of the first citation, all of the defendants, except Lerner, tore up their copies and threw them toward the bench. The record reflects the following:

"THE COURT: I wish to make the following comment of record, let the record show the defendants have now torn up and thrown across the courtroom—

DEFENDANT KELLY: That's what we think of it.

THE COURT: —without any effort by any counsel to intervene—

DEFENDANT MARSHALL: Pick up the garbage, Judge.

THE COURT: —the contempt citation that has just been read together with remarks continuing, which probably can't be caught in view of the fact that while the Court is speaking, these remarks are occurring."

The court then proceeded to hear allocution as to each of the defendants cited in the first certificate. Each defendant, whether appearing by counsel or pro se, was allotted twenty minutes. When the court stated that he would hear all parties but not hear legal argument, defendant Marshall was heard to say, "You don't care about the law, you don't care about the truth, what are you talking about? These people are just outraged." At one point during the proceedings the defendant Kelly stated:

"I'm glad that you used the term, you know, contempt of court, that's what you sent us to jail for because that's exactly what I feel for you."

And the defendant Marshall further characterized the contemptuous attitude of the defendants:

"I have utter contempt for the present judicial system in this country, I'm proud to say that, utter contempt, because what I have seen it do, and it doesn't matter whether or not you try

to be just or not because I believe, you know, in your way, I have said it before, you have tried in those narrow confines."

Defendant Stern was not named in the first certificate and was not a party to the contempt proceedings but insisted on speaking. When told that she had not been cited for contempt and that her continuing to speak might result in her citation for contempt, she stated:

"Now, I'm one of the seven defendants, and although I'm not specifically cited for contempt, although, let me say for the record, I'm in contempt of this court and fully so and consciously so, and I'll explain that later too, although I'm not held in contempt, nevertheless I was part of your mass dismissal of this trial, and whatever else you will try to do with the trial in the future."

And she went on to state:

"I would like to say that it was impossible for these lawyers to defend me, because as Michael Tigar so eloquently stated, there is absolutely no way that the gap—the bridge could be gapped—the gap could be bridged, excuse me, between what I believe in and what you stand for in this courtroom."

When Stern repeatedly refused to cease speaking, the following exchange took place:

THE COURT: You have been in contempt continually throughout this diatribe, you have interfered with the proceedings of this court, and I now hereby find you in contempt, and I want the certificate thereof forthwith.

Now, sit down—

(Defendants and Spectators shouting)

THE COURT: Remove any disorderly people.

DEFENDANT DOWD: You are contempt of the Vietnamese people.

DEFENDANT ABELES: Get out, your Honor, you're the one that is disruptive. Get out.

THE COURT: You must discontinue now, Mrs. Stern.

DEFENDANT ABELES: Why don't you give them something to hope for, instead of putting them in jail, old man?

THE COURT: Please discontinue right now.

DEFENDANT STERN: I'm sorry, your Honor, I prefer to continue with my remarks.

THE COURT: Please do not do so.

DEFENDANT STERN: They will have to drag me off to stop me.

THE COURT: If that is necessary—

DEFENDANT DOWD: Come on, let's see it, man, let's see them drag her off, I want to see the sight of those killers dragging off a woman who has just got out of the hospital two days ago, and, you old killer, you're so bloody it's unbelievable.

Attempts to silence Mrs. Stern and restore order in the courtroom brought further responses from defendants Abeles and Dowd. Defendant Abeles said, "You won't let her talk for two more minutes? What's the matter with you? You're a judge of justice? My ass, you're a justice." And defendant Dowd said:

"Kill the kid," "Kill the kid," "Kill the kid," "Kill the kid," "Kill the kid," "Kill the kid," "Kill the kid," "Kill the kid,"

The second certificate recites the events subsequent to Stern's speech as follows:

"At proceedings in open court in the presence of the judge commencing 9:00 a. m. by violent and disorderly conduct of all defendants other than Lerner, the following was personally seen and heard by the judge * * *

Defendant Stern's defiance of the directions, orders and warnings by the court in continuing her remarks precipitated loud, boisterous and violent actions and language in which the judge saw and heard defendant Stern and each defendant other than Lerner personally participate. Riotous conduct and an incipient riot occurred in the courtroom. When the disturbance had proceeded to a point when law enforcement officers on duty might not be able to control it without the use of weapons, at the request of a deputy marshal attending the judge, the judge left the courtroom about 12:00 noon. However, at least for a half hour or more scuffling and loud boisterous language in the courtroom could be heard in the judge's office even though the doors were closed."

At stake here is the power of the court to conduct an orderly trial. The contempt lies in a course of behavior which prevented the conduct of an orderly trial and ended with the obstruction of the orderly conduct of the contempt proceedings. The proceedings are permeated and punctuated with contemptuous verbalizations and conduct, culminating in violent misbehavior.

My associates stress the failure to cite the particular record references relied upon to support the convictions. The misconduct specified in the second certificate did begin with defendant Stern's refusal to stop speaking, but the requisite specificity is found in the incorporated record. It is my firm belief that the true nature and gravity of the conduct can only be understood, appreciated and judged by reference to the record of the entire proceedings. In no other way can an appellate court be fully informed of the nature and extent of the conduct held contumacious. The contempt is embodied in the incorporated record and it was not error to fail to record the whole record in haec verbae in the certificate.

I also disagree with the conclusion that the second certificate rests in part upon conduct occurring outside the judge's presence. It is true that the trial judge left the courtroom at the request of the deputy marshal "when the disturbance had proceeded to a point when law enforcement officers might not be able to control it without the use of weapons." But the "scuffling and loud boisterous language" was heard by the judge in his office, even though the doors were closed. It seems unduly critical to say that this

conduct was not in the presence of the judge.

I would affirm the conviction on the second certificate.

## APPENDIX I

---

United States District Court

Western District of Washington

---

| | |
|---|---|
| United States of America,<br>    *Plaintiff,*<br>   vs.<br>Charles Clark Marshall, III; Jeffrey Dowd; Joseph Kelly; Michael Abeles; Michael Lerner; Roger Lippman; Susan Stern, and Michael Justesen,<br>    *Defendants.* | No. 51,942 |

---

**CONTEMPT CERTIFICATE PURSUANT TO RULE 42(a), FEDERAL RULES OF CRIMINAL PROCEDURE**

This certificate is made pursuant to Federal Criminal Rule 42(a), which provides for summary disposition of criminal contempt. It is based solely on actions, language, other unjustified trial disruptions and inexcusable delays in trial proceedings by defendants, hereinafter designated "misconduct." The undersigned Judge, hereinafter designated "Judge," certifies he personally saw and heard all misconduct referred to herein, unless otherwise indicated, during eleven trial days in the above-entitled case. While the entire trial transcript and tape recording made by the court reporters by this reference is hereby incorporated herein, particularly significant portions of the transcript are indicated in the text or attachment hereto. The misconduct which the Judge in this certificate finds and holds to constitute contempt of court does not include any misconduct consisting of personal attack by words or actions directed to the Judge personally.

Mr. Maxey, co-counsel for defendants Stern and Abeles, at no time was seen or heard to conduct himself other than within proper professional conduct. The Judge finds that in the particular circumstances in which he was situated Mr. Maxey did everything he reasonably could to prevent or restrain his clients and other defendants from misconduct and to assist in the Judge's efforts toward a fair, orderly and expeditious trial.

On various occasions shown in the record each of defendants' attorneys Mr. Tigar, Mr. Holley and Mr. Steinborn refused to aid or assist in restraining their particular clients or any other defendant from misconduct, however, obvious, boisterous or serious. The enforcement of standards for professional conduct by attorneys is primarily a duty and responsibility of the legal profession acting through the officers and committees of bar associations directly concerned with particular instances of professional conduct. At this time the Judge will not further consider the conduct in this case of attorneys Tigar, Holley and Steinborn in the above particulars or any others.

The final misconduct that occurred Thursday morning, December 10, 1970, hereinafter designated "Thursday," recited or referred to herein, was the culmination of misconduct by defendants commencing prior to the beginning of courtroom proceedings on the first trial day and continuing at frequent intervals on each of the ten days preceding Thursday, that is, on 11/23, 11/24, 11/25, 11/30, 12/1, 12/2, 12/3, 12/7, 12/8 and 12/9. What occurred on Thursday cannot be fully understood or appraised apart from all of the misconduct that had occurred prior to Thursday. For that reason the entire record is incorporated in this certificate. The conduct of defendants on Thursday was very serious, so much so as to seriously impair fair trial either for plaintiff or for any defendant and, as the Court has found, and ordered, required mistrial. However, any penalty that may be imposed on any defendant will not exceed the maximum of six months imprisonment authorized under Federal Criminal Rule 42(a) as implemented by the United States Supreme Court in Bloom v. Illinois, 391 U.S. 194, 88 S.Ct. 1477, 20 L.Ed.2d 522 (1968).

For medical reasons, defendant Stern, at her request and with leave of court, was not in attendance at any session of court on either Wednesday or Thursday, 12/9 and 12/10. For that reason, despite her serious and repeated misconduct prior to 10/9, she is not found in contempt in this certificate.

At the last proceeding when all defendants except defendant Stern were present in the courtroom on Wednesday, 12/9/70, defendant Abeles interrupted proceedings with a contumacious remark. At that time all defendants then present were specifically admonished and cautioned that further contumacious conduct would not be tolerated and that in the next instance thereof, and all others following, the defendant responsible would be notified that the Judge deemed his misconduct to be contempt and certification thereof would follow (Tr. pages 1865–1869). Prior to the end of argu-

ment and decision on legal questions late Wednesday, defendants and their counsel had been provided with Jencks Act statements pertaining to plaintiff's witness Madsen who would take the stand at 9:00 a. m. the next day. All counsel agreed no further proceedings were necessary or desired prior to the direct examination of Madsen as a witness before the jury. All agreed his examination could and should commence before the jury at 9:00 a. m. the following morning, Thursday, December 10, 1970.

On Thursday morning, shortly prior to 9:00 a. m., the bailiff was directed to summon counsel and all defendants into the courtroom. The bailiff reported his efforts unsuccessful and shortly later, at about 9:10 a. m., while waiting for a further report from the bailiff, the Judge heard very loud noises apparently from repeated pounding upon the paneling of the door to the reception room of the Judge's chambers. The chambers consist of four adjoining rooms along a corridor about eight feet wide and approximately one hundred fifty feet long which extends nearly the full length of the city block on which the courthouse stands. Internal doorways between each of the chamber rooms have heavy doors through which only extremely loud sounds can be heard in the office of the Judge. The Judge's office is about twice the size of other rooms and his desk is about forty feet distant from the reception room door with a heavy door, closed at the time, intervening. The Judge went to the nearest door in his office opening to the corridor, opened it and then and there saw several persons, including defendant Dowd, in a noisy disturbance near the door of the reception room.

Immediately returning to his office, the Judge was advised by the bailiff that Mr. Holley and defendant Dowd wished to see him. As soon as a reporter and an attorney for the Government could be summoned Dowd and Mr. Holley entered the Judge's office. At that time the Judge stated he had heard loud noises reverberating in the corridor and into his

office and Dowd acknowledged he had been pounding on the door demanding entrance to the reception room to see the Judge. The proceedings at the conference are of record (Tr. page 1942).

At the end of the conference those present, including specifically Mr. Tigar, Mr. Holley and Mr. Steinborn, were advised that the presentation of evidence to the jury would begin immediately and that to assure this could be done the jury would be called into the courtroom before the Judge took the bench. On being advised by the bailiff that the jury were in the courtroom the Judge entered and took the bench at approximately 9:30 a. m. At that time none of the defendants were present in the courtroom and the district attorney and Mr. Maxey were the only counsel then present. After a greeting to the jury by the Judge and his admonition to spectators to remain seated and silent throughout the proceedings, all present in the courtroom—jury, Judge and the counsel referred to—sat silently awaiting the arrival of defendants and attorneys Tigar, Holley and Steinborn. Defendants were several times directed and requested to come to the courtroom for trial proceedings (Tr. pages 1957–1966).

At 9:50 a. m. no defendant having yet appeared in the courtroom, the Judge left the courtroom, proceeded rapidly and without stopping to nearly the far end of the corridor where a conference room for defendants and their counsel was located. When the Judge reached a step or two from the door it opened and through the opening the Judge directed defendants to come to the courtroom at once. The Judge immediately turned and started walking rapidly down the corridor toward his chambers, the office door of which is within a few feet of the courtroom entrance used by jurors in entering and leaving the courtroom. The nearest end of the jury box inside the courtroom is about a foot from that door, which was open at the time and all jurors were seated in the jury box.

While proceeding down the corridor loud and boisterous epithets and obsceni-

ties were repeatedly shouted primarily directed at the deputy marshals escorting the Judge, and loud noises of the disturbance were reverberating throughout the hallway and into the courtroom. The Judge saw and heard defendants Dowd, Abeles and Marshall yelling some of the violent language referred to. Others, not identified by the Judge, were also yelling. This tumultuous and near riotous conduct was heard and seen by the Judge until he arrived in his chambers and closed the door thereof. The Judge immediately proceeded through his office to the bench. When the Judge reached the courtroom defendant Marshall was standing in front of the jury box, within eight or ten feet of the nearest jurors, in the course of delivering remarks shown in the record (Tr. page 1967). Marshall continued such remarks to the jury despite repeated efforts of the Judge to stop him from addressing the jury. The transcript records what occurred thereafter.

The gross misconduct of defendants in refusing, after several times being notified by bailiff and counsel, to come to the courtroom, and their misconduct in the corridor above described, considered in the context of all previous misconduct by defendants, despite orders and warnings by the Court repeated many times, constituted willful, flagrant and totally inexcusable defiance of the court, resulting in serious and substantial interference with progress of trial of the case and obstruction in the orderly administration of justice.

The trial Judge saw and heard misconduct of defendants in the courtroom frequently every day for ten days prior to Thursday, December 10, 1970, consisting of: Standing, vocal and obviously prearranged demonstrations by spectators, sometimes led by one or more defendants and joined in by all; shouting epithets, sometimes threats of violence and profanity, and other improper language accompanied by a variety of disorderly movements and actions; interruption by one or more or all defendants in qualification of the jury, exercise

of challenges, opening statement for the plaintiff, examination of witnesses, offering of exhibits, making and hearing of objections, rulings and statements of the Judge, and in various other phases of trial proceedings.

When, after frequently repeated requests for order in the courtroom, admonitions concerning defendants' misconduct and warnings of possible consequences thereof, and particularly after the final warning given defendants on the day previous, at the beginning of the next scheduled session of the court defendants' final extended defiance of the court, boisterous and near riotous disruptive misconduct occurred, it was clear to this Judge beyond question that each of the defendants then present in fact was and must be found in contempt of court.

Accordingly, it is hereby certified that the totality of defendants' long continued and repeated misconduct hereinabove specified, in obvious defiance of admonitions and warnings by the Judge concerning defendants' misconduct in the courtroom, occurring frequently and in the presence of the jury, and the final culmination of such course of repeated misconduct that occurred on Thursday morning, December 10, 1970, all of which misconduct, including the final episode, occurred in the actual presence of the Judge and was personally seen and heard by the Judge, constituted a contempt of court committed by each of defendants Charles Clark Marshall, III, Jeffrey Dowd, Joseph Kelly, Michael Abeles, Michael Lerner and Roger Lippman, which contempt by each of them caused serious and substantial interference and delay in the trial of the above-entitled case and obstruction to the orderly administration of justice.

Dated at Tacoma, Washington, this 14 day of December, 1970.

/s/  George. H. Boldt
United States District Judge

United States District Court

Western District of Washington

---

United States of America,
Plaintiff,

vs.

Charles Clark Marshall, III; Jeffrey Dowd; Joseph Kelly; Michael Abeles; Michael Lerner; Roger Lippman; Susan Stern, and Michael Justesen,
Defendants.

No. 51,942

---

## CONTEMPT ORDER

Pursuant to Rule 42(a) of the Federal Rules of Criminal Procedure and upon the certificate attached hereto and the facts stated therein, which are made a part hereof to the same extent as though restated in full herein, the Court does hereby summarily find and adjudge the defendants Charles Clark Marshall, III, Jeffrey Dowd, Joseph Kelly, Michael Abeles, Michael Lerner, and Roger Lipp-man, and each of them, in contempt of this Court and in punishment thereof, each of them is hereby committed to the custody of the Attorney General, or his authorized representative, for imprisonment for a period of Six months.

Done in open court this 14 day of December, 1970.

/s/  George H. Boldt
United States District Judge

## APPENDIX II

---

United States District Court

Western District of Washington

---

| | |
|---|---|
| United States of America, *Plaintiff,* vs. Charles Clark Marshall, III; Jeffrey Dowd; Joseph Kelly; Michael Abeles; Michael Lerner; Roger Lippman; Susan Stern, and Michael Justesen, *Defendants.* | No. 51,942 |

---

CONTEMPT CERTIFICATE PURSUANT TO RULE 42(a), FEDERAL RULES OF CRIMINAL PROCEDURE

This certificate is made pursuant to Federal Criminal Rule 42(a), which provides for summary disposition of criminal contempt. It is based solely on actions, language, other unjustified disruptions and inexcusable delays in court proceedings by defendants, hereinafter designated "misconduct." The undersigned Judge, hereinafter designated "Judge," certifies he personally saw and heard all misconduct referred to herein. The entire transcript of proceedings and recordings made by the court reporter, and audio and visual recordings of the proceedings are hereby incorporated herein. The misconduct which the Judge in this certificate finds and holds to constitute contempt of court does not include any misconduct consisting of personal attack by words or actions directed to the Judge personally.

At proceedings in open court in the presence of the Judge commencing 9:00 a. m. this morning, Monday, December 14, 1970, and suspended 11:50 a. m. by violent and disorderly conduct of all defendants other than Lerner, the follow-ing was personally seen and heard by the Judge.

Defendant Stern, after all other defendants and their counsel had completed allocution in response to a contempt certificate which did not include defendant Stern but cited all other defendants as being in contempt, defendant Stern arose and attempted to address the court. She was requested to sit down and be silent inasmuch as she was not cited in the contempt certificate. Defendant Stern continued speaking despite numerous requests that she desist and admonitions and warnings by the court that she might be cited for contempt if she did not resume her chair and cease speaking. Nevertheless, she continued and insisted upon delivering an extended and apparently prepared address including an attack upon the court as an institution of the United States of America. Her remarks had little, if anything, to do with response to the contempt citation with which the proceeding was concerned. After speaking for longer than any defendant cited for contempt or his counsel had spoken, the court requested defendant Stern to discontinue her remarks. She refused to do so and continued her refusal after repeated directions and orders by the court.

Defendant Stern's defiance of the directions, orders and warnings by the court in continuing her remarks precipitated loud, boisterous and violent actions and language in which the Judge saw and heard defendant Stern and each defendant other than Lerner personally participate. Riotous conduct and an incipient riot occurred in the courtroom. When the disturbance had proceeded to a point when law enforcement officers on duty might not be able to control it without the use of weapons, at the request of a deputy marshal attending the Judge the Judge left the courtroom about 12:00 noon. However, at least for a half hour or more scuffling and loud and boisterous language in the courtroom could be heard in the Judge's office even though the doors were closed.

During the misconduct above specified, proceedings in court were at a standstill and could not be resumed for more than an hour. At about 1:20 p. m. the proceedings were resumed and continued to conclusion.

It is further certified that all of the above described misconduct occurred in the actual presence of and was personally seen and heard by the Judge, and that such misconduct constituted a contempt of court committed by each of defendants Charles Clark Marshall, III, Jeffrey Dowd, Joseph Kelly, Michael Abeles, Roger Lippman and Susan Stern, which contempt by each of them caused serious and substantial interference and delay of proceedings in the above-entitled case and obstruction to the orderly administration of justice.

Dated at Tacoma, Washington, this 14 day of December, 1970.

/s/  George H. Boldt
United States District Judge

United States District Court

Western District of Washington

|  |  |
|---|---|
| United States of America, *Plaintiff,* <br><br> vs. <br><br> Charles Clark Marshall, III; Jeffrey Dowd; Joseph Kelly; Michael Abeles; Michael Lerner; Roger Lippman; Susan Stern, and Michael Justesen, *Defendants.* | No. 51,942 |

CONTEMPT ORDER RE DEFENDANTS MARSHALL, DOWD, KELLY, ABELES, LIPPMAN and STERN

Pursuant to Rule 42(a) of the Federal Rules of Criminal Procedure and upon the certificate attached hereto and the facts stated therein, which are made a part hereof to the same extent as though restated in full herein, the Court does hereby summarily find and adjudge the defendants Charles Clark Marshall, III, Jeffrey Dowd, Joseph Kelly, Michael Abeles, Roger Lippman and Susan Stern, and each of them, in contempt of this Court and in punishment thereof, each of them is hereby committed to the custody of the Attorney General, or his authorized representative, for imprisonment for a period of Six (/s/ GHB) months to be served consecutive to, and not concurrent with, any other sentence of any court served or to be served by any defendant named herein.

Done in open court this 14 day of December, 1970.

/s/  George H. Boldt
United States District Judge