In the Matter of Summary Criminal Contempt Proceedings Against the Following Individuals June HEATHCOCK, Diane Williams, Jennie Cabaniss, Joyce Basenburg, Dean Quin, Jewell Basenburg, Sylvia Monsaco, Alena Hall, Linda Bradley, Bernice Spain, Bonnie Wise, and Naomi Butler, Appellants.

No. 82–7037.

United States Court of Appeals,
Eleventh Circuit.

Feb. 4, 1983.

Stanford, Fagan & Giolito, Morgan C. Stanford, Atlanta, Ga., for appellants.

Holly L. Wiseman, Asst. U.S. Atty., Birmingham, Ala., for appellee.

Before FAY and HATCHETT, Circuit Judges, and MORGAN, Senior Circuit Judge.

HATCHETT, Circuit Judge:

The issue presented is whether the failure of pickets to disperse in accordance with a court order constitutes behavior subjecting them to summary criminal contempt sentences, where the judge who issued the order visited the site of the picketing and observed the violations of the order. We set aside the convictions and sentences.

Shadescrest Health Care Center, Inc. (Shadescrest), was involved in a labor dispute with its employees and their union, Local 2904, American Federation of State, County and Municipal Employees, AFL–CIO (Union). The dispute escalated to the point of a potential strike and work stoppage. In order to prevent these activities, Shadescrest petitioned the district court to restrain any strike instituted by the Union. On January 8, 1982, the district court granted the temporary restraining order because the dispute was subject to a collective bargaining agreement which included grievance procedures and a no-strike clause. The court also ordered the parties to submit the dispute to arbitration as provided by the agreement.

In disregard of the restraining order, the appellants decided to strike. On the evening of January 8, 1982, Shadescrest reacted to the continuance of the strike and picketing by filing a motion for a civil contempt show cause order in the district court. The district court issued a civil contempt show cause order requiring Union representatives and several of the appellants to appear before the court on Monday, January 11, 1982. This order, which was served on the Union and the appellants, specifically stated that any person failing to comply with the restraining order of January 8, 1982, would be subject to summary criminal contempt proceedings. On January 10, 1982 (a Sunday), Shadescrest filed a motion for additional emergency injunctive order and for a criminal contempt show cause order. This motion stated that: (1) members of the Union continued to picket the entrance to the Shadescrest facility, thus physically blocking and interfering with traffic and persons trying to enter or leave the nursing home; (2) nails and tacks had been spread in the driveway of the nursing facility; (3) the delivery of medicine had been obstructed; (4) threats and harrassment had been directed towards friends and relatives of people in the facility; and (5) union members had erected tents and ignited fire barrels. On that Sunday, the district court issued a supplemental restraining order enjoining all persons from picketing at the entrance to the facility and

ordered the United States Marshal to serve anyone disobeying the supplemental order with a criminal show cause order. On January 11, 1982, Shadescrest officials advised the district court that picketing and other activities were continuing. In response to this information, the judge went to the place of picketing to observe the violations of his orders. Upon arrival, the judge observed eight individuals picketing in front of the entrance to Shadescrest. The judge immediately began questioning these individuals about their identities and the court orders.

During questioning, the judge identified himself to the pickets and interrogated them concerning their knowledge of the court orders. Satisfied that the pickets had knowledge of the orders, the judge directed the marshals to arrest them. The judge then walked to an area across the street from the entrance to the nursing home and ascertained the names of five persons located in and near a tent. He ordered two of the five persons arrested and instructed the others to take down the tent and remove camping items from the area. The twelve appellants were arrested during this on-site inspection.

Following the arrests, the United States marshals transported the appellants to the federal courthouse in Birmingham. That same day, the judge conducted summary contempt proceedings against the twelve appellants. No witnesses were called to establish or prove that the appellants were in contempt of the judge's order. The judge's findings of criminal contempt were based solely on his observations at the picket site.[1] At the conclusion of the summary proceedings, the appellants were sentenced to jail for varying lengths, the longest being twenty days for four of the twelve appellants.

The appellants now contend that the district court abused its discretion in issuing the criminal contempt order in such a summary manner. They also contend that when the district judge visited the scene of the strike, he transformed himself into an adversary rather than an arbiter. In summary, the appellants contend that although the judge was present at the scene of the violations, "the court" was not present; therefore, assuming a violation of the orders, the violations did not occur in the actual presence of the court.

The government, on the other hand, contends that the judge's actions were proper because the offensive conduct occurred in the actual presence of the court. The government further contends that the district court consists of more than concrete walls and a bench; it contends that "the court" is the embodiment and effectuation of the authority of law. Alternatively, the government argues that it is the capacity in which the judge is serving that determines whether contumacious conduct occurs in the actual presence of the court.

Rule 42(a), Federal Rules of Criminal Procedure states:

(a) Summary Disposition. A criminal contempt may be punished summarily if the judge certified that he saw or heard the conduct constituting the contempt and that it was committed in the actual presence of the court. The order of contempt shall recite the facts and shall be signed by the judge and entered of record.

To enter a criminal contempt order under Fed.R.Crim.P. 42(a), the contumacious conduct must occur "in the actual presence of the court." This case presents a narrow question, and we are required to walk an equally narrow line. We are called upon to determine what is "in the actual presence of the court" for purposes of criminal contempt under rule 42(a).

Historically, there are two types of criminal contempt: direct and indirect.

---

1. The record can be viewed as supporting the notion that the judge visited the nursing home to insure himself that those who continued to picket were fully aware of his orders and the consequences of disobeying those orders. On the other hand, in the absence of the personal observations, the appellants would have had the right to the protections afforded by rule 42(b).

Direct contempt is committed in the "actual presence of the court." *See Nye v. United States,* 313 U.S. 33, 61 S.Ct. 810, 85 L.Ed. 1172 (1941); *United States v. Marshall,* 451 F.2d 372 (9th Cir.1971). "Indirect contempt is contumacious behavior occurring beyond the eye or hearing of the court and for knowledge of which the court must depend upon the testimony of third parties or the confession of the contemnor." *United States v. Marshall,* 451 F.2d at 373. Both contempt classifications under Fed.R. Crim.P. 42(a) and (b) require two separate procedures for trying and punishing contumacious behavior.[2] Direct contempt provides for summary disposition; indirect contempt requires notice and hearing. *United States v. Willett,* 432 F.2d 202, 204 (9th Cir.1970); 8B Moore's Federal Practice ¶ 42.04[1] (2d ed. 1981). In this case, we are concerned with direct criminal contempt because the record indicates a summary disposition by the district court.[3]

The provisions of rule 42(a) have been narrowly interpreted by the former Fifth Circuit and other circuits because of the extraordinary consequences surrounding its imposition. These consequences allow the court to punish without benefit of counsel, notice, jury, indictment, or presentation of a defense. *See, United States v. Brannon,* 546 F.2d 1242, 1248 (5th Cir.1977). Thus, we shall continue to narrowly interpret rule 42(a) because by its nature, its use can easily infringe upon the constitutional rights of the alleged contemnor. *See Bloom v. Illinois,* 391 U.S. 194, 88 S.Ct. 1477, 20 L.Ed.2d 522 (1968); *Fisher v. Pace,* 336

U.S. 155, 69 S.Ct. 425, 93 L.Ed. 569 (1948); 8B Moore's Federal Practice ¶ 42.02[1].

█ In narrowly interpreting rule 42(a), we are mindful of the history and purpose of this summary contempt power. Its purpose is to provide the court with an immediate means of discipline to vindicate and preserve the authority of the court. *United States v. Wilson,* 421 U.S. 309, 316, 95 S.Ct. 1802, 1806, 44 L.Ed.2d 186 (1975); 8B Moore's Federal Practice ¶ 42.02[3]. Under the Judiciary Act of 1789, Congress provided virtually unbridled power to judges to issue summary contempt orders. This was curtailed, however, when Congress passed the Act of Congress of March 2, 1831, 4 Stat. 487. *Ex Parte Robinson,* 19 Wall. 505, 510, 22 L.Ed. 205 (1873). "That Act [of 1831] limited the contempt power to misbehavior in the presence of the court or so near thereto as to obstruct justice; misbehavior of court officers in their official transactions; and disobedience of or resistance to the lawful writ, process, order, or decree of the court." *Bloom,* 391 U.S. at 203, 88 S.Ct. at 1483 (footnote omitted). Of the summary contempt power, the Court in *Bloom* stated that:

> [b]efore the 19th century was out, a distinction had been carefully drawn between contempts occurring within the view of the court, for which a hearing and formal presentation of evidence were dispensed with, and all other contempts where more normal adversary procedures were required. *Ex Parte Terry,* 128 U.S. 289 [9 S.Ct. 77, 32 L.Ed. 405] (1888); *In re Savin,* 131 U.S. 267, [9 S.Ct. 699, 33 L.Ed.

---

2. Fed.R.Crim.P. 42(b) provides:

(b) Disposition Upon Notice and Hearing. A criminal contempt except as provided in subdivision (a) of this rule shall be prosecuted on notice. The notice shall state the time and place of hearing, allowing a reasonable time for the preparation of the defense, and shall state the essential facts constituting the criminal contempt charged and describe it as such. The notice shall be given orally by the judge in open court in the presence of the defendant or, on application of the United States attorney or of an attorney appointed by the court for that purpose, by an order to show cause or an order of arrest. The defendant is entitled to a trial by jury in any case in which an act of Congress so

provides. He is entitled to admission to bail as provided in these rules. If the contempt charged involves disrespect to or criticism of a judge, that judge is disqualified from presiding at the trial or hearing except with the defendant's consent. Upon a verdict or finding of guilt the court shall enter an order fixing the punishment.

3. The facts indicate the possibility that the conduct here amounts to nothing more than civil contempt. Whether the conduct warrants civil or criminal contempt citation, however, is not a question we must answer. The question before us involves only criminal contempt under 42(a).

150] (1889). [*Bloom,* 391 U.S. at 204, 88 S.Ct. at 1483–84.]

█ In resolving our issue, several factors must be recognized: (1) the place where the judge happens to be is not alone determinative of the issue of the court's presence; and (2) the function being performed, while not alone determinative, is of great weight. In this case, no hearing was convened at the nursing home for the presentation of evidence or for any other purpose. Lawyers for the parties were neither given notice nor invited to participate in the proceedings. Nevertheless, it must be admitted that the judge acted in a fact-finding role much like that performed by any judge in a criminal contempt situation. Simply because proceedings take place in the formal setting of a courtroom with the judge present does not mean that they occur "in the actual presence of the court." Conversely, proceedings which take place outside the courtroom with the judge present do not necessarily take place outside "the actual presence of the court." While the formal trappings of a gavel, robe, and other indicia of authority usually associated with courtroom proceedings may not be required, we are sure that some degree of formality usually found in the courtroom setting must accompany the exercise of the judicial function in order to have the proceedings "in the actual presence of the court." In this case, the informal manner in which the fact finding took place fails to satisfy the "in the presence" requirement of rule 42(a). The requirement of "in the actual presence of the court" is satisfied when the judge convenes a hearing and performs a judicial function with the usual respect for notice and participation by the parties where appropriate. When such requirements have been met, if during the presentation of evidence or argument contumacious acts occur, the perpetrators are subject to the sanctions provided by rule 42(a).

█ There is a clear distinction between the judge as a person and the person as a judge in the performance of judicial functions. In this instance, on a close question, we hold that to meet the "in the actual presence of the court" requirement of rule 42(a), the judge must be in a properly convened hearing and performing a traditional judicial function such as fact finding or adjudicating. We do not, however, intend this opinion to be interpreted to hold that only in the formal setting of a courtroom may judicial proceedings take place to satisfy the "in the actual presence of the court" requirement. To the contrary, for rule 42(a) purposes, a judicial proceeding may be held anywhere as long as the proceeding is properly convened, the judge is performing a judicial function, and the usual decorum is observed.

## CONCLUSION

Because the conduct cited did not occur in the actual presence of the court, we reverse the district court's summary contempt order and set aside the convictions and sentences.[4]

REVERSED.

FAY, Circuit Judge, concurring specially:

I concur in all of Judge Hatchett's opinion except for the language summarizing our holding which reads:

"In this instance, on a close question, we hold that to meet 'in the actual presence of the court' requirement of rule 42(a), the judge must be in a properly convened hearing and performing a traditional judicial function such as fact finding or adjudicating."

In my opinion this language is too broad and unnecessary. The facts of this case are unusual and set forth in detail. The trial judge made a special trip to the scene of the alleged activity. No hearing was convened at the nursing home, no notice of the judge's visit was given to anyone and counsel were not present. The observations of the judge were not made while he was routinely carrying out his duties. There

4. The parties agree that the case is not rendered moot by the fact that all sentences have been served. The government agrees to the setting aside of the conviction of Diane Williams due to questions raised regarding her mental capacity.

clearly existed sufficient time to give telephonic notice to counsel. A court reporter could have accompanied the judge and transcribed the questions and answers. It was neither an emergency nor a spontaneous situation.

My concern is that we are precluding the use of rule 42(a) in all situations other than *convened hearings.* Situations can and do arise in strange ways. Would a defendant, about to go on trial, be in criminal contempt if he deliberately prevented the judge from getting to the courthouse for his scheduled trial? Would the use of rule 42(a) depend upon whether such obstructive activity took place one block from the judge's home, in the courthouse parking lot, in the hallway of the courthouse or in the judge's chambers? Possible hypotheticals are too numerous to list. The point is we are dealing with a specific set of limited facts and it is not necessary that we draw lines or make rules to cover all possibilities.

Most respectfully, I disagree with the language used to describe our holding.