† Petition to review granted. *Page 30 
[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 31 
Bruce Currie appeals from an order of the trial court finding him in contempt of court and imposing a fine of $500 or, in lieu of payment, a sentence of thirty days in the county jail.[1]
Upon appeal, Currie contends that: (1) his act was not a contempt of court; (2) the trial court's findings are insufficient to support the conclusion that a contempt of court occurred; (3) the trial court improperly used the summary procedures of sec. 785.03(2), Stats.; and (4) the trial court erred in failing to accord Currie an opportunity for allocution. We reject all of Currie's arguments with the exception of the latter. We remand for purposes of an allocution proceeding wherein Currie will have an opportunity to make a statement in mitigation of his offense.
Currie was summoned as a petit juror in the case of State of Wisconsin v. Thomas M. Dewerth.[2] The trial court, in the course of its voir dire of the petit jurors, inquired whether any member of the panel had experienced any dealings with the Washington County District Attorney's Office. Currie responded: *Page 33 
My brother was murdered by a drunk driver, and my family had dealings with the Washington County District Attorney's Office.
The trial court then asked Currie as to the extent of any possible prejudice. Currie responded:
I don't like anybody in the Washington County District Attorney's Office.
In light of this response, the trial court excused Currie.[3]
As Currie stepped down from the jury box and passed near the defense table, he made a remark which was partially heard by the trial court. The remark, to the extent heard, prompted the trial court to immediately remove the jury panel from the courtroom and to conduct further proceedings concerning Currie.
At these proceedings, the trial court indicated it had heard only a portion of the comment.[4] Defense counsel then reported that Currie had said, "I hope they hang you. " Counsel also reported that the remark was made with "feeling and expression." The trial court then stated that it had heard the "hang you" portion of the remark and proceeded to summarily find Currie *Page 34 
in contempt of court and impose a fine of $1000.[5] The trial court also granted Dewerth's motion for a new jury panel, thus necessitating a continuance of the case.
Following the imposition of the fine, Currie attempted to speak but was halted by the trial court with the admonition that any further statements might draw a jail sentence.[6]
 THE CONTEMPT FINDING[7]
Currie contends that his act was not a contempt *Page 35 
of Court. Section 785.01, States., defines a contempt of court, in part, as "intentional . . . misconduct in the presence of the court which interferes with a court proceeding or with the administration of justice. . . ." Section785.01(1)(a). Currie's conduct clearly qualified as contempt on both counts for it not only interfered with the proceeding and the administration of justice, but also aborted the entire trial. A more complete and classic contempt of court can hardly be imagined.
 THE TRIAL COURT FINDINGS[8]
Currie argues that the trial court's finding that the jury panel and remaining petit jurors were "infected" *Page 36 
by the remark is unsupported by the record. Currie contends that the trial court was required to conduct voir dire of the panel and the petit jurors in order to determine whether such taint actually existed. We disagree.
The question of whether or not a defendant's act is a contempt of court is one which the trial court has far better opportunity to determine than a reviewing court. Schroeder v. Schroeder, 100 Wis.2d 625, 640,302 N.W.2d 475, 483 (1981). Although the remedy for direct contempt may be harsh, an appellate court will not reverse except in a plain instance of mistake or abuse of discretion. In re Adam's Rib, Inc., 39 Wis.2d 741, 746,159 N.W.2d 643, 646 (1968). In a setting where the judge is prompted to act summarily to punish for contemptuous conduct, the act has occurred under the eye of the court and the contemnor is present. Groppi v.Leslie, 404 U.S. 496, 504 (1972). A hearing in a formal sense is not necessary because the judge has personally seen the offense and is acting on his own observations.Id.
Adam's Rib holds that the standard of review for the trial court's findings in a contempt proceeding is whether the findings are contrary to the great weight and clear preponderance of the evidence. Adam's Rib
at 746-47, 159 N.W.2d at 646-47. Stated in current terms of standard of review, where a trial is to the court, we inquire whether the findings are clearly erroneous. See sec. 805.17(2), Stats. Here, we conclude they are not. *Page 37 
Although the trial court did not hear the entirety of Currie's remark, that portion which was heard ("hang you") prompted the trial court to take the immediate action of removing the jury from the courtroom and ordering Currie to remain. The trial court then informed itself as to the balance of the offending statement before summarily finding Currie in contempt. Neither Currie nor the prosecutor disputed defense counsel's recital and characterization of Currie's full statement. The trial court found that Currie made the remark while facing away from the bench. From this, it follows that the other petit jurors in the back of the courtroom or near the defense counsel table likely heard the remark and thus were "infected" thereby. This is precisely what the trial court found. The finding is not clearly erroneous.
Nor are we persuaded that the trial court was required to conduct further voir dire to specifically determine whether any of the potential jurors had actually heard the remark. As stated above, the trial court's finding that the panel was "infected" is a logical and fair inference from the physical facts. While such voir dire might strengthen the factual basis for the trial court's finding, it was not necessary to sustain it. Currie next argues that the trial court erred by not expressly finding that Currie's act was intentional.
Contempt of court is defined as an "intentional . . . misconduct. . . . ." See sec. 785.01(1)(a), Stats. It is undisputed that the trial court did not make an express finding as to the intentional nature of Currie's conduct. We, however, do not find this omission as fatal to the *Page 38 
trial court's conclusion that a contempt of court occurred.
The trial court factually described Currie's conduct and its perceived effect upon the jury panel. The trial court then labeled the conduct a contempt of court. We hold these findings and conclusion sufficient to satisfy the statutory elements of contempt. In this regard, we also note that neither did the trial court expressly find that Currie's conduct interfered with a court proceeding or with the administration of justice.See sec. 785.01(1)(a), Stats. That these were the results of Currie's conduct, however, is readily apparent from the record of the proceedings and from the findings and conclusion that the trial court did make. The trial court's description of the conduct and its effect upon the proceedings, coupled with the conclusion that the conduct constituted a contempt of court, satisfies all the elements of a contempt, including intent.
Next, Currie argues that even if it was not necessary for the trial court to expressly find that his conduct was intentional, the record otherwise does not show it to be so. Specifically, Currie contends that his actions must have had the purpose to interrupt or disrupt the proceedings. Here, Currie borrows from the criminal code, sec. 939.23(3), Stats., which defines "intentionally" as requiring that the "actor either has a purpose to do the thing or cause the result specified or believes that his act, if successful, will cause that result."
However, the contempt statute, sec. 785.01(1)(a), Stats., requires only that the misconduct be intentional — not that a disruptive result be intended or even foreseen. Here there is no claim (nor any basis *Page 39 
for one) that Currie's utterance of the remark was not intentional.[9]
Cases from other jurisdictions, although addressed to the concept of "willfulness" as opposed to "intentional," are supportive of our holding. Willfulness in a civil contempt means a deliberate or intentional violation, as distinguished from an accidental, unintentional or negligent violation of an order. Falstaff Brewing Corp.v. Miller Brewing Co., 702 F.2d 770, 782 (9th Cir. 1983);In re Mossie, 589 F. Supp. 1397, 1409 (W.D. Mo. 1984),rev'd on other grounds, 768 F.2d 985 (8th Cir. 1985). In the context of a contempt proceeding, willfulness is defined as a volitional act done by one who knows or should reasonably be aware that his conduct is wrongful.United States v. Baker, 641 F.2d 1311, 1317 (9th Cir. 1981). Such willfulness may be inferred from admitted evidence. Id.
We therefore reject Currie's claim that the record does not support the existence of the element of intent.
 SUMMARY PROCEDURE
We next examine whether the facts of this case permitted the trial court to use the summary procedures of sec. 785.03(2), States. We conclude they did. *Page 40 
The first sentence of sec. 785.03(2), Stats., allows a judge to impose a punitive sanction summarily when a contempt is committed in the presence of the court.
The judge presiding in an action or proceeding may impose a punitive sanction upon a person who commits a contempt of court in the actual presence of the court.
Id. Undisputedly, Currie's contempt was committed in the presence of the court. However, the second sentence of the statute appears to require a further condition — the need to preserve order — before a punitive sanction can be summarily imposed.
The judge shall impose the punitive sanction immediately after the contempt of court and only for the purpose of preserving order in the court and protecting the authority and dignity of the court.
Id. Read in its entirety, we are uncertain whether the statute requires an ongoing state of disorder or disruption as a condition precedent to the summary imposition of a punitive sanction, or whether a disruption which has terminated, nevertheless, still permits the summary imposition of such a sanction.
Ambiguity arises when more than one reasonable, although not necessarily correct, meaning can be attributed to a word, phrase, or statute. State v. Nixa,121 Wis.2d 160, 164, 360 N.W.2d 52, 54 (Ct.App. 1984). Here, we conclude that the statute allows for either of the above reasonable interpretations.[10] Thus, we conclude *Page 41 
the statute is ambiguous. For the reasons stated below, we conclude that a prior disruption, presently quelled, is sufficient to permit the summary imposition of a punitive sanction.
Essentially, Currie argues that because his act of contempt was so effective as to terminate the proceedings, there was no more order in the court to preserve. We disagree. Contempts which are disruptive to the point of aborting the proceedings are the ultimate challenges to the orderly administration of justice and the ultimate form of disorder. We reject an interpretation of the statute which permits summary punishment of those whose conduct fails to cause such an end but forbids it against those whose conduct achieves it.
Moreover, absurd and illogical results would follow if we were to hold that an ongoing state of disorder or disruption must exist before a trial court may summarily proceed. For example, if Currie had engaged in continuous disruptive conduct, but not of a kind resulting in a termination of the proceedings, there is no question but that he could have been dealt with summarily. Yet where, as here, a momentary act of contempt is so effective, complete and devastating as to abort the entire proceedings, Currie's interpretation would require a nonsummary procedure.[11] *Page 42 
It strikes us as patently unfair and illogical that a contemnor whose conduct does not abort the proceedings receives the summary end of the contempt stick with minimal or no due process, while the contemnor whose conduct is so disruptive so as to abort the proceedings receives the benefits of the nonsummary procedure with its full panoply of constitutional rights.
Absurd and unreasonable constructions and applications of statutes are to be avoided. See State CentralCredit Union v. Bigus, 101 Wis.2d 237, 242,304 N.W.2d 148, 150-51 (Ct.App. 1981). To avoid such result, we read the "preserving order" language of sec. 785.03(2), Stats., as referring to the effect of the contemptuous conduct upon the order of the court at the time of theoccurrence of the conduct and not as to the time of thefinding of contempt or imposition of the sanctions. Indeed, it is difficult to imagine a situation where a continuously disruptive contemnor would not be sufficiently under control (through the use of physical restraint or other means) to permit the trial court to conduct a punitive sanction proceeding. If Currie's argument prevailed, the summary imposition of punitive sanctions could rarely, if ever, occur — a condition urged by the dissent. However, we conclude such a pronouncement would emasculate the trial courts when dealing with disruptions which destroy order and offend the dignity of judicial proceedings.
The American Bar Association Standards for Criminal Justice appear to be in accord with our interpretation of sec. 785.03(2), Stats.: *Page 43 
Inherent power of the court. The court has the inherent power to punish any contempt in order to protect the rights of the defendant and the interests of the public by assuring that the administration of criminal justice shall not be thwarted. The trial judge has the power to cite and, if necessary, punishsummarily anyone who, in the judge's presence inopen court, willfully obstructs the course of criminalproceedings.
Standards for Criminal Justice § 6-4.1 (2d ed. 1980) (emphasis added). This standard does not require an ongoing state of disorder or disruption before a court may act summarily.
The dissent contends that our approval of summary contempt procedures under these facts is contrary to In re B.L.P., 118 Wis.2d 33, 39,345 N.W.2d 510, 514 (Ct.App. 1984), where we noted the preferred policy of the law to choose due process over expediency. While the dissent correctly cites this principle ofB.L.P., it overlooks the different factual and legal setting in which it was uttered. B.L.P. held that "a summary procedure is only available if a contemptuous act is committed in the actual presence of the court," id. at 41, 345 N.W.2d at 515, a condition satisfied here.B.L.P. goes on to hold that "because B.L.P. did not
commit a contemptuous act in the court's presence, summary procedure is not appropriate." Id. (emphasis added). Thus, B.L.P. supports our holding here.[12] *Page 44 
Thus we conclude that the trial court's summary imposition of punitive sanctions, being necessary to preserve order in the court and to uphold the authority and dignity of the court, was proper.
 RIGHT OF ALLOCUTION
Currie next argues that even if the trial court properly used the summary procedure, it nevertheless was constitutionally required, under the facts of this case, to grant him a meaningful opportunity to speak in mitigation of his act. We agree.
To a large extent, both Currie and the respondent rely on the same line of cases for their contrary positions.See Taylor v. Hayes, 418 U.S. 488 (1974); Groppiv. Leslie, 404 U.S. 496 (1972); Levine v. United States,362 U.S. 610 (1960); Brown v. United States, 359 U.S. 41
(1959), overruled on other grounds in Harris v.United States, 382 U.S. 162 (1965). Currie argues that these cases "stress" that an opportunity to be heard occurred in conjunction with the summary imposition of contempt sanctions. The state observes that none of the cases fixes a bright-line rule that such an opportunity is required. Both are correct.
In general, the power to punish for contempt is to be used sparingly, and it should not be used arbitrarily, capriciously, or oppressively. Adam's Rib,39 Wis.2d at 746, 159 N.W.2d at 646. The ever present danger that summary powers may be abused has brought appellate courts to view the exercise of such powers with caution and circumspection. See United States v. Marshall,451 F.2d 372, 374 (9th Cir. 1971). It is essential that courts proceeding summarily must be meticulously *Page 45 
careful to observe procedural safeguards.Widger v. United States, 244 F.2d 103, 107 (5th Cir. 1957).
Although language such as that cited above suggests that some degree of procedural due process or procedural safeguards apply in a summary proceeding, we must, in all candor, acknowledge that other decisions suggest that no such protections apply in a summary proceeding.
It results from what has been said that it was competent for the circuit court, immediately upon the commission, in its presence, of the contempt recited in the order of September 3, to proceed upon its own knowledge of the facts, and punish the offender, without further proof, and without issue or trial in any form. It was not bound to hear any explanation of his motives, if it was satisfied . . . — from what occurred under its own eye and within its hearing — that the ends of justice demanded immediate action, and that no explanation could mitigate his offense or disprove the fact that he had committed such contempt of its authority and dignity as deserved instant punishment.
Ex Parte Terry, 128 U.S. 289, 309-10 (1888).
Even as ardent an advocate of procedural due process as Justice Frankfurter has opined that "[s]ummary punishment of contempt is concededly an exception to the requirements of Due Process." Sacher v. UnitedStates, 343 U.S. 1, 36 (1952) (Frankfurter, J., dissenting). Such exception is premised upon the dictates of necessity. Id. Justice Frankfurter, in the same breath, however, concedes that "[n]ecessity must bound its limits."Id. *Page 46 
The respondent cites two Wisconsin cases, Rubinv. State, 192 Wis. 1, 211 N.W. 926 (1927), and In re Rosenberg,90 Wis. 581, 63 N.W. 1065 (1895), for his contention that the Terry statement has received the blessing of the Wisconsin Supreme Court. Although Rubin
cited the Terry language with approval, Rubin was accordedthe right of allocution prior to the finding of contempt and imposition of sanctions. In Rosenberg, although the supreme court stated that it was a "proper case to be punished summarily," id. at 587, 63 N.W. at 1067, the contemnor was imprisoned until he complied with a discovery order of the court. Thus, Rosenberg, with its purge conditions, is actually a civil contempt case.[13] Therefore, neither Wisconsin case squarely meets the "right of allocution" issue presented here.
Thus, no case as yet has clearly stated whether the constitution applies in a summary contempt proceeding. This uncertainty prevails because the varied exigencies of the moment presented in contempt cases interfere with the fixing of a bright-line rule. Contempt assumes many forms and impacts on the proceedings in various ways. Some extreme contempt situations might, of necessity, require dispensing with the constitution entirely. Harris v. United States, 382 U.S. 162
(1965), acknowledges that in summary contempt proceedings, speedy punishment "may be necessary in order to achieve `summary vindication of the court's dignity and authority.'" Id. at 164 (quoting Cooke v.United States, 267 U.S. 517, 534 (1925)). However, most contempt situations should allow for at least a modicum of due process or procedural safeguards. Whether *Page 47 
such accommodations are required must, of necessity, be decided on a case-by-case basis.
As to the need for speedy punishment in this case, we think Groppi v. Leslie, 404 U.S. 496 (1972), is instructive. Although dealing with legislative contempt, the Supreme Court in Groppi utilized much of the case law governing judicial contempt of court as the rationale for its decision. Groppi recognized that a right to be heard, even briefly, might go to "matters in explanation or mitigation [which] might lessen the harshness of the legislative judgment or avoid punishment altogether."Id. at 503. In addressing the equivalent situation in a court of law, the Supreme Court observed:
Where a court acts immediately to punish for contemptuous conduct committed under its eye, the contemnor is present, of course. There is then no question of identity, nor is hearing in a formal sense necessary because the judge has personally seen the offense and is acting on the basis of his own observations.Moreover, in such a situation, the contemnorhas normally been given an opportunity to speak inhis own behalf in the nature of a right or allocution.
Id. at 504 (footnote and citations omitted; emphasis added). Faced with such an explanation of the offense, the conduct might be found excusable. Id. at 505. If not, at least the conduct might be explained.[14] *Page 48 
Therefore, while a trial court may be entitled to proceed summarily because of the disruptive to its order and the interference with its ability to continue the proceedings, this does not necessarily mandate the deliverance of immediate punishment without a meaningful opportunity to be heard in mitigation. Under the facts of this case, although the trial court was entitled to proceed summarily, we conclude it was not entitled to immediately punish without any allowance for minimal procedural safeguards.
The state places great emphasis on Ex Parte Terry,128 U.S. 289 (1888), and its language that the trial court was not bound to hear any explanation of the contemnor's motives when the ends of justice demanded immediate action and no explanation could mitigate the offense. Terry is distinguished on its facts, however. Terry had engaged in a physical and violent confrontation in the courtroom which disrupted the proceedings. The disturbance continued to an area immediately outside the courtroom. Terry argued that the contempt order was void because it deprived him of an opportunity to defend. The Supreme Court rejected this argument because Terry had voluntarily absented himself from the courtroom by carrying his contempt beyond its bounds.
Such is not the case here because Currie remained in the presence of the trial court in obedience to its order. Moreover, Currie attempted to speak but was halted by the trial court. Thus, the Terry facts are inapposite. Here, the trial court, unfortunately faced with an aborted proceeding, could have accorded Currie a *Page 49 
momentary right of allocution without unduly interfering with whatever other business the trial court may have been required to perform.
We stress that the right of allocution is limited to those situations where the speedy imposition of punishment is not immediately necessary to achieve some vindication of the court's authority or to restore order. This holding does not contemplate a prolonged or involved hearing. It mandates only a limited, but meaningful, opportunity for a convicted contemnor to offer an explanation or justification in mitigation of the offense. It remains within the discretion of the trial court as to the duration and the extent of the hearing. This will vary from case to case depending upon the circumstances then prevailing.
We also stress that this procedure, which admittedly delays, temporarily, the imposition of punitive sanctions in a summary proceeding, does not serve to deprive the trial court of its authority to proceed summarily. Summary procedure does not refer to the timing of the action with reference to the offense but refers to a procedure which dispenses with the formal requirements of due process. See, e.g., Sacher v. UnitedStates, 343 U.S. 1, 9 (1952). If we were to hold that summary punishment can be imposed only instantly upon the event, it would be an incentive to the trial courts to pronounce, while smarting under the irritation of the contemptuous act, what should be a well-considered judgment. Id. at 11. As did the United States Supreme Court in Sacher, we reject such a requirement.
The complaint might be made that this holding splits hairs too finely by permitting the use of summary procedure while forbidding the immediate imposition *Page 50 
of punitive sanctions without a right of allocution. This concern is answered, however, by recalling the historical justification for the use of summary contempt procedures. This procedure, with its absence of procedural and due process safeguards, is met with legal and constitutional approval largely because the contempt is committed under the eye and ear of the court. Faith in the ability of the judge to objectively recall the incident serves as the underpinning for this extreme departure from standard fact-finding procedure.
The same rationale does not hold true for the imposition of a penalty. Faith in the ability of the judge to accurately "recreate" the event without formal hearing and fact-finding does not serve to give the judge a "crystal ball" as to reasons that might exist by way of explanation in mitigation of the act of contempt. Thus, absent compelling circumstances demonstrating the need to punish immediately, fundamental fairness requires a right of allocution.
Trials and judicial proceedings are matters of intense emotions and high feelings for litigants, witnesses, lawyers, jurors and judges alike. When the fervor of the moment appears to inspire an intemperate remark resulting in a disruption of the proceedings, the trial court must have the tool of summary procedure available in order to effectively deal with the situation. By the same token, because this tool is vast in its power and minimal in its protections, appellate courts are required to view the exercise of such powers with caution and circumspection. See Marshall451 F.2d at 374. In our judgment, fundamental fairness requires a minimal opportunity to speak in mitigation of a contempt offense unless compelling circumstances *Page 51 
demand otherwise. We see no such compelling circumstances under the facts of this case.
Here again we note that the ABA Standards for Criminal Justice are in accord:
Notice of charges and opportunity to be heard. Before imposing any punishment for criminal contempt, the judge should give the offender notice of the charges and at least a summary opportunity to adduce evidence or argument relevant to guilt or punishment.
Standards for Criminal Justice § 6-4.4 (2d ed. 1980). The commentary to this standard states:
Although there is authority that in-court contempts can be punished without notice of charges or an opportunity to be heard, such a procedure has little to commend it, is inconsistent with the basic notions of fairness, and is likely to bring disrespect on the court. Accordingly, notice and at least a brief opportunity to be heard should be afforded as a matter of course. Nothing in this standard, however, implies that a plenary trial of contempt charges is required.
Id., commentary (footnote omitted).
We therefore remand this matter to the trial court for purposes of affording Currie a right of allocution.
By the Court. — Order affirmed in part, reversed in part and cause remanded.
[1] The trial court originally imposed a fine of $1000. The final order reduced the fine to $500 — the maximum permitted by sec.785.04(2), Stats.
[2] The record forwarded to us on appeal does not reveal the exact nature of the charge against Dewerth. Currie's brief states that the charge was operating while intoxicated. The respondent's brief does not dispute this.
[3] The propriety of excusing Currie from the jury panel is not at issue on appeal.
[4] At this point, the court reporter also interjected that she had not heard the remark and that it was not on the record. A parenthetical entry in the official transcript, following the trial court's excusing of Currie, indicates that Currie made a statement as he passed the defense table. The entry further indicates that the remark was "unheard" by the court reporter. This indicates that the remark was in fact heard but was not decipherable by the court reporter.
[5] The amount of the fine was an estimate of the costs to the county for the production of the jury panel and to the Village of Germantown for the production of its police officer witnesses.
[6] Later in the proceedings, the following exchange between Currie and the trial court took place:
THE COURT: . . . Okay. How long do you need to pay that fine, Mr. Currie?
MR. CURRIE: Do I get to have a lawyer?
THE COURT: No, buster. This is summarital, [sic] summarily occurred right in the presence of the Court. I'll give you 60 days within which time to pay the fine. You fail to pay it, 45 days in the county jail.
MR. CURRIE: I got a question for you, sir. I was up here how many times in front of you, and you were aware of what our family has gone through in the past.
THE COURT: I don't have the foggiest what your family went through.
MR. CURRIE: It was in your court.
THE COURT: I don't know what your family went through, sir, and I don't care in that regard; it doesn't excuse the remark.
[7] As a threshold claim, the respondent contends that Currie has waived his right to assert his various claims because he did not challenge the trial court's order nor seek reconsideration of the findings or the sanction. While, ordinarily, we might agree that these issues are better presented first for trial court consideration, here the trial court had warned Currie that any further attempts to speak might result in a jail sentence. We doubt that the trial court would have adhered to this view if later hearing had been sought by Currie. We nonetheless choose not to hold Currie to a strict application of the waiver rule given the prospects, however remote, which he faced.
[8] The present statutes do not expressly require findings relative to the contempt. The predecessor statute, sec. 757.04(1), Stats. (1977), required the judge to certify on the record the conduct constituting the contempt. 18 U.S.C. Rule 42(a), the equivalent federal statute, similarly requires a certification by the judge "that he saw or heard the conduct constituting the contempt and that it was committed in the actual presence of the court."
The reason for this requirement is obvious. Because the defendant has been convicted without notice or hearing, there is no record of the conviction upon which appellate review may be based. The factual recitation in the certificate supplies this deficiency. Accordingly, "[t]his requirement is more than a formality. It is essential to disclosure of the basis of decision with sufficient particularity to permit informed appellate review."
United States v. Marshall, 451 F.2d 372, 374-75 (9th Cir. 1971) (citations omitted). The same holds true under our statute even though there is no express requirement of findings or certification. Meaningful review could not occur without such findings.
[9] The dissent contends that Currie's act did not challenge the authority of the court. This seems to assume that Currie must have harbored some intent to do so. However, as we have held, it is the conduct which must be intentional, not its effect upon the proceedings — a conclusion with which the dissent otherwise does not appear to disagree.
[10] We agree with the respondent's observations as to the "odd and somewhat internally discordant aspect" of secs. 785.01(2) and785.03(2), Stats. The former defines a punitive sanction as one imposed to punish a past contempt of court for purposes of upholding the authority of the court. The latter, however, permits the imposition of punitive sanctions for purposes of preserving order in the court and protecting the authority and dignity of the court. This contradictory language supports our conclusion that the statute is ambiguous.
[11] The dissent stresses that Currie's contempt consisted of a single act and that Currie was otherwise respectful to the court. This approach erroneously implies that an assessment of whether an act is contemptuous and whether summary proceedings are appropriate rests upon its frequency rather than its substance and effect.
[12] Moreover, we noted in B.L.P. that a remedial sanction was a likely penalty to be imposed for a violation of the juvenile court's dispositional order. B.L.P., 118 Wis.2d at 42,345 N.W.2d at 515. Here, Currie's conduct involved no disobedience of a court order. Thus, a remedial sanction against Currie was not sought.
[13] The opinion on the motion for rehearing acknowledged as much. See In re Rosenberg, 90 Wis. 581, 590, 64 N.W. 299, 299
(1895).
[14] We acknowledge that the record reveals some remarks by Currie which might explain or mitigate his conduct. These were not offered, however, in response to any invitation to speak. Rather, the remarks are a nonresponsive statement to an inquiry by the trial court as to whether Currie needed time to pay the fine. We also acknowledge that Currie may have nothing further to offer the trial court by way of explanation or mitigation of his conduct. From the limited remarks Currie was permitted to interject, we simply don't know.